BROWN, APPELLANT, *v.*
CITY OF CLEVELAND ET AL., APPELLEES.

(No. 80-789—Decided April 29, 1981.)

94

*Weiner, Orkin, Abbate & Suit Co., L.P.A., Mr. Louis H. Orkin* and *Mr. Mitchell L. Alperin,* for appellant.

*Mr. Thomas E. Wagner,* director of law, *Mr. Robert McCarthy* and *Mr. John S. Polito,* for appellees city of Cleveland and board of zoning appeals.

*Per Curiam.*  Appellant contends, in essence, that (1) his property is immune from governmental regulation because he is adding a permitted use to a non-conforming use; (2) the trial court committed reversible error by suppressing allegedly relevant, probative evidence; and (3) he has been unconstitutionally denied equal protection of the law since the city of Cleveland permits similarly-situated property owners to operate gasoline service stations and grocery stores at one site.

It is imperative to note that, in arriving at our decision today, we are guided by an overriding, fundamental principle of Ohio zoning law. Appellant, the party challenging the relevant provisions of the Cleveland Zoning Code, has had, at all stages of this litigation, the burden of demonstrating that portions of the zoning code are either facially unconstitutional or unconstitutionally applied to him. *Hilton* v. *Toledo* (1980), 62 Ohio St. 2d 394. See, generally, *Willott* v. *Beachwood* (1964), 175 Ohio St. 557. At this stage of Ohio jurisprudence, it would almost seem unnecesssary to state that zoning ordinances which are enacted pursuant to a municipality's police powers are presumed valid until the contrary is clearly shown by the party attacking the ordinance. See *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276, 278-279. See, generally, *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259; *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23; *Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365.

Appellant contends that his property is immune from fur-

ther municipal regulation because he is adding a permitted use, a grocery store, to a non-conforming use, a gasoline service station. We find that the mere statement of such a proposition should be, and is, self-refuting. Under the unique facts of this case, where the owner of a non-conforming use diversifies his product line and expands his services, the non-conforming use can be regulated for the protection of the public health, safety and general welfare of the community. As we stated in *Columbus* v. *Union Cemetery* (1976), 45 Ohio St. 2d 47, 49:

"Uses which do not conform to valid zoning legislation may be regulated, and even girded to the point that they wither and die. *Akron* v. *Chapman* (1953), 160 Ohio St. 382, paragraph one of the syllabus; *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127; *Davis* v. *Miller* (1955), 163 Ohio St. 91, 95-97, Taft, J. concurring."

See, also, *State, ex rel. Keener,* v. *Serr* (1976), 53 Ohio App. 2d 143.

While it is evident, as appellant intimates, that Section 359.01(a) of the Cleveland Zoning Code permits a nonconforming use to be expanded through the addition of a conforming, permitted use, Section 359.01(a) sanctions such an addition "* * * only if the Board finds after public hearing that such substitution or other change is no more harmful or objectionable than the previous non-conforming use in floor and other space occupied, in volume of trade or production, in kind of goods sold or produced, in daily hours or other period of use, in the type or number of persons to occupy or to be attracted to the premises or in any other characteristic of the new use as compared with the previous use."

In the case *sub judice,* the commissioner of buildings, the board of zoning appeals, the trial court and the Court of Appeals each found that appellant's new venture required additional parking, which appellant failed to prove he could safely accommodate. The accessory off-street parking requirements of Section 349.04(f) of the Cleveland Zoning Code are rationally related to several safety hazards which the city may lawfully regulate pursuant to its police powers: protection of pedestrians and drivers, elimination of traffic congestion and reduction of air and noise pollution. See, generally, *State, ex*

*rel. Assoc. Land & Investment Corp.*, v. *Lyndhurst* (1958), 168 Ohio St. 289; Annotation, 74 A.L.R. 2d 418.

Thus, appellant's non-conforming use is not immune from compliance with the foregoing parking provisions of the zoning code. Appellant's immunity argument runs contrary to the prevailing law.

Furthermore, appellant asserts that the trial judge erred by not permitting appellant to introduce evidence which appellant claims is relevant. We have carefully examined the entire record in this case and find that the excluded evidence was logically and legally irrelevant.

To be relevant, evidence must tend to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. See Evid. R. 401. See, generally, *Whiteman* v. *State* (1928), 119 Ohio St. 285; *Barnett* v. *State* (1922), 104 Ohio St. 298. In the case at bar, the critical considerations were the size of the lot and building, the nature of the non-conforming use and the number of parking spaces that could be safely accommodated on the lot. None of the excluded evidence, which according to appellant's counsel would have shown that appellant had secured a vendor's license to sell food and cigarettes and that appellant had been certified to participate in the food stamp program by the United States Department of Agriculture, addresses the aforementioned disputed issues. Finally, as we will demonstrate, appellant failed to establish the proper foundation for the introduction of photographs of the purportedly "similar stations." Accordingly, we find that appellant suffered no prejudice from the exclusion of the foregoing evidence.

Finally, appellant argues that he has been unconstitutionally denied equal protection of the law since the city permits similarly-situated property owners to operate gasoline service stations and grocery stores at a single site. As we indicated above, it is the appellant who has the burden of proof on this issue. In an attempt to meet this burden, appellant merely proffered eight photographs of what he claimed were four similarly-situated properties. Conspicuous by its absence from this proffer, however, was any foundation indicating the zoning district, size and parking potential of these purportedly

similar sites. Having failed to establish such proper foundation, appellant has thus failed to prove, with adequate documentation, the existence of any equal protection violation. As an appellate court, we are limited by the record before us. While we acknowledge the need for a court, on occasion, to take judicial notice of undisputed facts (see Evid. R. 201; Morgan, Judicial Notice, 57 Harvard L. Rev. 269), we cannot engage in crystal-ball analysis as to the status of these other properties.

At this stage in the litigation, appellant's case has undergone extensive review. The commissioner of buildings, the board of zoning appeals, the trial court and a unanimous Court of Appeals have all denied appellant's application to operate his structure in the dual capacity of a gasoline service station and a grocery store, in order to protect the health, safety and general welfare of the people of the community. We find that such denial is supported by the preponderance of the substantial, reliable and probative evidence on the whole record. This is precisely the situation where public safety must prevail over private profit.

As Justice (later Chief Justice) O'Neill persuasively stated in *Willott* v. *Beachwood, supra* (175 Ohio St. 557), at 560:

"The determination of the question of whether regulations prescribed by a zoning ordinance have a real or substantial relation to the public health, safety, morals or general welfare is committed, in the first instance, to the judgment and discretion of the legislative body. Where such a judgment deals with the control of traffic, volume of traffic, burden of traffic, effect upon valuation of property, municipal revenue to be produced for the city, expense of the improvement, land use consistent with the general welfare and development of the community as a whole, or, in short, where the judgment is concerned with what is beneficial or detrimental to good community planning, it is in the first instance a legislative and not a judicial matter. The legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations, and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable.

"Even though the court, on the facts presented, might

decide otherwise than did council, so long as the matter is reasonably debatable, the court has no authority to interfere. The power of a municipality to establish zones, to classify property, to control traffic and to determine land-use policy is a legislative function which will not be interfered with by the courts unless such power is exercised in such an arbitrary, confiscatory or unreasonable manner as to be in violation of constitutional guaranties."

See, generally, *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202.

For all the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER and VICTOR, JJ., concur.

P. BROWN and C. BROWN, JJ., dissent.

VICTOR, J., of the Ninth Appellate District, sitting for HOLMES, J.

PAUL W. BROWN, J., dissenting. The gas station use admittedly pre-existed the restrictive zoning and is therefore a legal non-conforming use. The display and sale of convenience grocery items is a permitted use under the zoning code which requires no additional zoning application. That use affects the existing non-conforming use only if it can be shown that the dual use makes the existing non-conforming use more burdensome overall. There is no such evidence here, although evidence of a speculative nature as to the effect of dual use is the basis of the order below.

Small gasoline stations are presently confronted with economic problems arising out of the difficulty in obtaining gasoline and maintaining profit margins. Many are closing, while others are being converted into neighborhood convenience stores which are much more desirable in the scheme of things than are abandoned gas stations. Where, as here, there is a new use of part of such existing premises for a permitted purpose, I consider the interference here observed to be a gratuitous bureaucratic boondoggle in no way legislative in character.

CLIFFORD F. BROWN, J., dissenting. The right of the plaintiff-appellant to a variance,[4] in order to add a few grocery items for retail sale at his gasoline service station business operation must be approached by keeping in focus elementary principles of real property law. Zoning ordinances are in derogation of the common law, and deprive the property owner of uses of his land to which he would otherwise be entitled. Therefore, where interpretation is necessary zoning ordinances are ordinarily construed in favor of the property owner. *In re University Circle, Inc.* (1978), 56 Ohio St. 2d 180,184; *Pepper Pike* v. *Landskroner* (1977), 53 Ohio App. 2d 63, 76; 3 Anderson, American Law of Zoning (2d Ed.) 4, Section 16.02.

Zoning ordinances which impose restrictions upon the use of private property will be strictly construed and their scope cannot be extended to include limitations not therein clearly prescribed; exemptions from such restrictive provisions are for like reasons liberally construed. *Davis* v. *Miller* (1955), 163 Ohio St. 91 (Taft, J., concurring, at page 95); *State, ex rel. Ice & Fuel Co.,* v. *Kreuzweiser* (1929), 120 Ohio St. 352, 356; *State, ex rel. Moore Oil Co.,* v. *Dauben* (1919), 99 Ohio St. 406. Local authorities must enact and enforce only those restrictions or prohibitions necessary to exclude trades and industries considered dangerous, unwholesome or offensive and otherwise refrain from invading property rights. *Village of Ottawa* v. *Odenweller Milling Co.* (1936), 57 Ohio App. 170, 184. Cleveland zoning officialdom and the lower courts abandoned these elementary principles to reach their unjust result.

Defendants-appellees, city of Cleveland *et al.,* in their brief, the zoning officials in the administrative proceedings, and, in effect, the lower courts, when referring to plaintiff's business operation continually repeat that he sought to add an additional business, a grocery store, as if the addition were a separate and distinct business. It is nothing of the sort. It is still a service station, with the inside of the existing building divided by a wall so that groceries can be sold on one side, leav-

---

[4] The lower courts treat this case as one involving the denial of a use variance. However, there is some question whether a special use permit was really at issue. Whether plaintiff was denied a variance or a special use permit, the same reasoning supports an order authorizing this particular use.

ing the other side as it was, for use as a gasoline service station. Plaintiff eliminated the automobile repair bays in order to use the area for the sale of food. No new buildings or additional exterior construction were proposed. The valid, nonconforming use as a gasoline service station has not been abandoned. Plaintiff's variance application seeks recharacterization of a portion of the existing building to a grocery use so that he then could operate his one business in a dual manner. By shifting the emphasis of his retail business, without altering it's nature, plaintiff was entitled to the grant of either a variance or a special permit.

The grant of a variance to plaintiff for the addition of a food line is compelled by Section 329.03 the Cleveland Zoning Code, variance powers, as follows:

"(b) Such variance shall be limited to specific cases where:

"(1) The practical difficulty or unnecessary hardship [in carrying out the Zoning Code provisions] inheres in***the premises***because of physical size, shape or other characteristics***which differentiate it from other premises in the same district***;

"(2) Refusal of the variance appealed for will deprive the owner of substantial property rights; and

"(3) Granting of the variance appealed for will not be contrary to the purpose and intent of the provisions of this Zoning Code."

Appellees concede that operation of a convenience market like plaintiff proposes is a permitted use at this location. Nothing would be in more perfect harmony with the purpose and intent of the zoning ordinance, and its provisions for variances, than to keep plaintiff's service station, already located in a local retail district, just where it is and permit the addition of a food line. The station's physical size, shape and prevailing economic realities create practical difficulties in using it for anything else. In frustration one might observe, in an inquiring way, just what earthly evil exists when a service station operator also sells groceries to his customers. Obviously the answer is none. By contrast it serves a good purpose; the second use as a retail food outlet is a convenience to the neighborhood. Such dual use of a service station is a common trend in these days of decreasing gasoline consumption and in-

creased service station closings. Its prohibition on St. Clair Avenue in the city of Cleveland is both anachronistic and unjust. The result may well be the addition of another vacant service station building to blight Cleveland's urbanscape. Since this is a perfect case where the grant of a variance will avoid an unconstitutional invasion of property rights, and because plaintiff operates one business, constituting one non-conforming use, the service station, independent area and parking space[5] requirements in the Cleveland Zoning Ordinance are inapplicable.

The addition of a line of groceries will serve substantially the same customers who previously patronized this neighborhood business. No additional parking spaces are needed. All these wordy restrictions concerning parking spaces and area limitations in the present case are nothing more than a smokescreen for zoning officials apparently committed to thwarting progress and stopping the use of property for the general welfare of the community.[6] The proposed dual use is in

---

[5] The parking space requirements relied on by the local authorities to deny this variance are contained in Section 349.04(f) of the Cleveland Zoning Ordinance, which provides in pertinent part:

"Accessory off-street parking spaces shall be provided and maintained in accordance with the requirements set forth in the following table:
"* * *

"(f) Retail Sales Uses.
"Food stores, supermarkets—For establishments having less than 2,000 square feet of gross floor area, one for each 500 square feet of gross floor area.* * *
"* * *

"Gasoline service stations—One for each 100 square feet of gross floor area."

It is apparent that these off-street parking space requirements refer to two separate and independent businesses and not to the plaintiff's business where he uses one building for a dual purpose.

[6] This reliance on the bureaucratic verbosity found in the zoning provisions here, particularly the mumbo-jumbo of Section 355.03 (independent area required), (see fn. 2) is a means to prevent any improved use of plaintiff's property, or any other property in the local retail district on St. Clair Avenue. It causes one to remember the admonition from the Apostle Paul: "For the written code kills, but the spirit gives life." 2d Corinthians, 3:6. In Cleveland the effect in this zoning case is to let the written code kill. This valiant administrative decision may well be sufficient to kill the business of plaintiff as a small gasoline station operator, in need of an additional line of business as a result of our continuing energy problems and the accompanying financial pinch. Then there will be another blighted business corner lot in Cleveland to serve the health, safety and general welfare of the community.

no way detrimental to the health, safety and morals of the community. The total lot space, parking space, and independent area zoning ordinance requirements are all red herrings to obscure the realities of the situation and to legalize official harassment of a small business.

The underpinning of the decision today is a perceived consensus in our past decisions upholding those zoning ordinances which have a real or substantial relation to the public health, safety and general welfare of the community, as determined by the judgment and discretion of the legislative body. It is asserted that the judicial judgment may not be substituted for the legislative judgment when the issue is *fairly debatable,* citing *Willott* v. *Beachwood* (1964), 175 Ohio St. 557, 560. The decision also refers to *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259; *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202; *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276; *Columbus* v. *Union Cemetery* (1976), 45 Ohio St. 2d 47, 49; *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23; and *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127.[7] However, these cited cases are so far removed factually and as to legal issues from the case *sub judice,* at least concerning the standard of judicial scrutiny, that these cases have lost their entire value as precedent when applied to the facts in the case at bar.

Note that neither *Siffrin, Dudukovich, Renalist, Columbus* or *Curtiss* involve an R. C. Chapter 2506 administrative appeal from a zoning board or agency to the common pleas court and none concerns denial of a use variance. *Siffrin* was an original action in common pleas court to declare a statute unconstitutional. *Dudukovich* was an appeal to common pleas court by Dudukovich of her dismissal as an employee of Lorain Metropolitan Housing Authority—there was no zoning issue

---

[7] To use these six recent decisions of our court to preclude a judicial reversal of the board of zoning appeals' decision and presume the legislative authority to have acted properly, as applied to the plaintiff Brown's gasoline service station, is extending such decisions to the ridiculous and absurd. The heavy reliance on *Willott, supra,* today is the equivalent of holding that there is no meaningful judicial review of any zoning board decision. It encourages local zoning officials to disregard the true purpose and objective of zoning: the development of all properties in each use district in harmony with each other, and in harmony with all other use districts. Zoning was not intended to throttle the use of real property for a greater good than its past use when the proposed changed use is in perfect harmony with all other property in such use district.

whatever involved. *Renalist* was a criminal appeal by defendant attacking the organized crime statute, R. C. 2923.04(A)(5). *Columbus* was an original action in the common pleas court to enjoin expansion of a non-conforming use. *Curtiss* was an original action in common pleas court for a declaratory judgment and injunctive relief to prevent enforcement of a zoning ordinance. This court granted partial relief in *Curtiss* because the zoning legislation unreasonably deprived the owner of use of his property.

The *Mobil Oil* case, cited *supra,* did involve an R. C. Chapter 2506 administrative appeal from the board of zoning appeals to the common pleas court, as in the instant case, on the board's refusal to grant a use variance for a gasoline station. However, the gasoline station was not a permitted use in the single family residential district for which it was proposed. This was a reasonable and valid board decision. By contrast the *Brown* case *sub judice* involves rearranging a gasoline station so as to include a small grocery store which is a *permitted* use in a local retail district. *Mobil Oil,* like *Curtiss, supra,* is authority for granting a use variance to appellant David Brown.

Finally, *Willott* v. *Beachwood* (1964), 175 Ohio St. 557, is clearly distinguishable and not controlling. Willott filed an original action in the common pleas court for a declaratory judgment against the village officials. Willott attacked the reclassification of 80 acres of land from residential to shopping center use. This was a challenge to the legislative zoning action of the municipality, not an administrative appeal of a use variance under R. C. Chapter 2506.

By contrast the instant appeal of appellant David Brown is an R. C. Chapter 2506 administrative appeal from the zoning board of appeals to the common pleas court appealing a refusal to grant a use variance. In such an appeal the scope of review under R. C. 2506.04 is whether the zoning board's decision "is unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record." This statutory yardstick is to be used at every judicial level to determine whether the Cleveland zoning board decision denying plaintiff his variance should be vacated and reversed.

A refusal to grant a variance in order to add a few grocery lines, not a supermarket, superimposed upon a gas station business, is unreasonable and has absolutely no relationship to the police power.[8] The lower courts and the board of zoning appeals should be reversed.

---

[8] Perhaps the reason the use variance and permit was denied to plaintiff, as appears from the zoning board of appeals hearing transcript, was plaintiff's failure to establish rapport and sufficient meaningful relationship with Councilman Moss, councilman for the ward embracing plaintiff's gas station, to obtain through their joint efforts a liquor permit for the sale of beer and wine along with the grocery line. At the zoning board hearing Councilman Moss expressed his opposition to plaintiff's variance request, and the following brief excerpts are very revealing.

"Councilman Moss:***Not only that, but Mr. Brown***has applied for a liquor permit on that premises***."
"***

"Mrs. Brown:***I would like to say something since Mr. Moss brought up the liquor thing, which wasn't an issue at this point. You state that you came to our store, at least you told one of the employees, you told one of our employees that you came to our store and said if we wanted a liquor permit, that we should come to you personally, and you would see to it that we got it, and since we didn't—yes, that's what you said."

At this point the board quickly curtailed further discussion, emphasizing the importance of following the will of an elected representative of a given ward, such as Moss, and with lightning speed denied plaintiff's application.