CITY OF EUCLID, APPELLEE, *v.* MABEL ET AL., APPELLANTS

(Nos. 47856 through 47862—Decided October 9, 1984.)

*Patrick R. Rocco,* law director, *David Lombardo* and *Lawrence R. Hupertz,* for appellee.

*Richard P. Gilmore, Ford L. Noble* and *Thomas L. Meros,* for appellants.

NAHRA, J. Grace Mabel, Victoria Cicek, Casimir Choromanski, Jeane Zupanic, Carmen Tarantino, Phylis Jordan and Jim Fratcher, appellants, were convicted of violating Section 1743.32(h) of the Codified Ordinances of the City of Euclid,[1] which prohibits political lawn signs on residential property. Appellant Jim Fratcher had political advertising attached to the outside of his front storm door, and the remaining appellants had signs on their front lawns which advertised the election of a political candidate. After the trial court denied appellants' motions to dismiss, thus upholding the validity of the ordinance, appellants pled no contest. The trial court found appellants guilty, fined each appellant ten dollars, and placed all of them on probation. Appellants have timely appealed.

I

Appellants' first two assignments of error are that:

"I. The trial court erred in overruling appellants' motion to dismiss the charges against appellants in that the ordinance upon which the city of Euclid's criminal prosecution was brought is a denial of appellants' rights to the freedom of speech secured by the First Amendment to the Constitution of the United States, and Section 11, Article I, of the Constitution of Ohio.

"II. The trial court erred in overruling appellants' motion to dismiss the charges against the appellants in that the ordinance upon which the city of Euclid's criminal prosecution was brought is a denial of appellants' rights to the equal protection of the laws secured by the Fourteenth Amendment to the Constitution of the United States."

These two assignments of error will be discussed together since appellants' equal protection argument, discrimination based upon content, lends itself to traditional freedom of speech analyses.

Section 1743.32(h) of the Codified Ordinances of the City of Euclid provides that:

"Political graphics shall be permitted for a period of not more than seventeen days before and five days after an election, with the size of the graphics not to exceed two square feet in area per graphic and such graphics to be located within an occupied residence as window graphics not to exceed two political graphics per residence."

Appellants contend that this ordinance denies free speech since it discriminates on the basis of content. The city argues that the ordinance is content neutral, that it represents a reasonable time, place or manner regulation, and that it serves compelling government interests.

The challenged ordinance has been declared unconstitutional under the federal Constitution in *Meros* v. *Euclid* (N.D. Ohio 1984), 594 F. Supp. 259, and we reach the same conclusion here under the Ohio Constitution as well.

The United States Supreme Court has recently addressed similar challenges under the First Amendment[2] utilizing two different approaches. In some cases, the court has applied a test to determine whether an ordinance is

---

[1] The challenged ordinance provides that:

"Political graphics shall be permitted for a period of not more than seventeen days before and five days after an election, with the size of the graphics not to exceed two square feet in area per graphic and such graphics to be located within an occupied residence as window graphics not to exceed two political graphics per residence."

[2] The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law * * * abridging the freedom of speech * * *."

unconstitutional on its face. See, *e.g., Members of City Council* v. *Taxpayers for Vincent* (1984), 80 L.Ed.2d 772. In other cases, the court has applied a balancing test to determine whether the government has a compelling interest which overrides the First Amendment rights of the private party. See, *e.g., Consolidated Edison Co.* v. *Public Serv. Comm.* (1980), 447 U.S. 530. We will apply both tests in our review of Euclid's ordinance.

The First Amendment to the United States Constitution and Section 11, Article I[3] of the Ohio Constitution protect the exercise of free expression. Freedom of speech, however, is not absolute, and several categories of expression have been exempted from First Amendment protection. See, *e.g., Miller* v. *California* (1973), 413 U.S. 15 (obscenity); *Brandenburg* v. *Ohio* (1969), 395 U.S. 444 [48 O.O.2d 320] (speech inciting immediate unlawful action); *Chaplinsky* v. *New Hampshire* (1942), 315 U.S. 568 (fighting words). Political speech, unlike the unprotected categories of expression, is at the core of the First Amendment and is therefore "entitled to the fullest possible measure of constitutional protection * * *." *Members of City Council* v. *Taxpayers for Vincent, supra,* at 794.

## A. Facial Analysis

An ordinance may be declared invalid on its face if it is unconstitutional in every conceivable application. *Taxpayers for Vincent, supra,* at 781. It is well-established that generally the government cannot restrict expression on the basis of its subject matter.[4] See, *e.g., Police Dept. of Chicago* v. *Mosley* (1972), 408 U.S. 92, 95. "* * * To allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth." *Consolidated Edison Co.* v. *Public Serv. Comm., supra,* at 538. As a result, a city may not select a particular type of speech for differential treatment. *Metromedia, Inc.* v. *San Diego* (1981), 453 U.S. 490, 514.

In this case, the city has singled out and prohibited lawn signs on residential property which carry political messages. Real estate lawn signs and other commercial lawns signs are permitted. The city has thereby impermissibly decided which viewpoints may and may not be conveyed through this medium of communication. This is exactly the type of content discrimination prohibited by the First Amendment, see *Metromedia, Inc.* v. *San Diego, supra; Carey* v. *Brown* (1980), 447 U.S. 455; *Norton Outdoor Advertising, Inc.* v. *Arlington Heights* (1982), 69 Ohio St. 2d 539 [23 O.O.3d 462], and prohibited by Section 11, Article I of the Ohio Constitution.

The city argues, however, that the ordinance is content-neutral since it does not discriminate against any one particular political view in favor of another. The United States Supreme Court specifically rejected an analogous concept of neutrality in *Consolidated Edison Co.* v. *Public Serv. Comm.,*

---

[3] Section 11, Article I of the Ohio Constitution provides, in relevant part, that "[e]very citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. * * *"

[4] Only in two narrowly drawn exceptions were government regulations based on content upheld. In *Greer* v. *Spock* (1976), 424 U.S. 828, and *Lehman* v. *Shaker Heights* (1974), 418 U.S. 298 [63 O.O.2d 235], private parties asserted a right of access to public facilities. These cases were subsequently distinguished and held inapplicable to challenges by a private party seeking to use his own property to express his views rather than seeking access to public facilities. See *Consolidated Edison Co.* v. *Public Serv. Comm.* (1980), 447 U.S. 530, 538-540.

supra. In that case, the Public Service Commission argued that because its prohibition against the discussion of nuclear power, both pro and con, in utility bill inserts was related to the broad subject matter rather than to the views of a particular speaker, its ban should be upheld. In rejecting this argument, the Supreme Court stated that "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic. * * *" Consolidated Edison Co. v. Public Serv. Comm., supra, at 537; see, also, Metromedia, Inc. v. San Diego, supra, at 518-519. We similarly reject this argument.

The city further contends that its ordinance is a reasonable time, place or manner restriction because it merely regulates the size and location of political signs by permitting two political messages in residential windows. There is no question that reasonable time, place or manner regulations may be imposed upon the various methods of speech to prevent the frustration of legitimate government goals. See, e.g., Heffron v. Internatl. Soc. for Krishna Consciousness, Inc. (1981), 452 U.S. 640. However, these regulations must apply to all speech irrespective of content. Erznoznik v. Jacksonville (1975), 422 U.S. 205, 209. Therefore, in order to withstand a constitutional challenge, "time, place, or manner restriction[s] may not be based upon either the content or subject matter of speech." Consolidated Edison Co. v. Public Serv. Comm., supra, at 536. Because the city's ordinance regulates on the basis of subject matter, i.e., only political graphics are so regulated, the ordinance cannot be upheld as a content-neutral reasonable time, place or manner regulation.

We hold, therefore, that Section 1743.32(h), Euclid Codified Ordinances is invalid on its face. The ordinance impermissibly discriminates on the basis of content in violation of the First Amendment to the United States Constitution, Meros v. Euclid, supra, and Section 11, Article I of the Ohio Constitution, and is therefore unconstitutional in every conceivable application.

B.   Competing Interests Analysis

An ordinance which restricts the speech of a private individual "may be sustained only if the government can show that the regulation is a precisely drawn means of serving a compelling * * * [government] interest. * * *" Consolidated Edison Co. v. Public Serv. Comm., supra, at 540. The city contends that its ordinance prevents a public nuisance, avoids and prevents local crime, preserves safe highways, and preserves the aesthetics of the community. The trial court, in its opinion upholding the city's ordinance, stated that:

"* * * [A]utomobiles have been driven up across sidewalks over lawns to strike down political graphics emplanted in front lawns, that political graphics have been thrown through windows, that they have been torn down by vandals, thrown out into the streets where the political graphics are run over by automobiles causing damage to persons and property. The police are constantly called during the political season when such graphics are posted in front lawns as a result of political graphics being vandalized."

We conclude that none of the government interests advanced is compelling in order to suppress the political speech of individuals through the use of lawn signs on their own property. Lawn signs as a medium of communication are unique. The United States Court of Appeals for the Ninth Circuit, in striking down an ordinance which, among other things, banned temporary signs from residential areas, stated that:

"* * * the First Amendment interests involved in the display of political

posters adjacent to public thoroughfares are substantial. Moreover, means of political communication are not entirely fungible; political posters have unique advantages. Their use may be localized to a degree that radio and newspaper advertising may not. With exception of handbills, they are the least expensive means by which a candidate may achieve name recognition among voters in a local election." (Footnote omitted.) *Baldwin* v. *Redwood City* (C.A. 9, 1976), 540 F.2d 1360, 1368.

Similarly, the United States District Court for the Northern District of California expounded on the importance of political signs by stating that:

"The temporary political sign offers special advantages to the candidate seeking public office and to the advocate promoting a particular position on a state ballot measure. These signs are a relatively inexpensive means of campaigning. Their use can be localized so that certain areas which the advocate wishes especially to reach may be targeted. A candidate or partisan can use the temporary sign to place a name or an issue before the public. In a campaign for political office, political posters can be effectively utilized to build up the candidate's name recognition and to establish him as a serious contender. The temporary political sign has special value to the non-incumbent or relatively unknown candidate who can use the signs to identify his name among the electorate. The less well-known candidate can test the waters to see whether his candidacy is viable before going to more expensive media such as television or radio." *Antioch* v. *Candidates' Outdoor Graphic Serv.* (N.D. Cal. 1982), 557 F. Supp. 52, 59.

We agree with the federal courts and recognize the importance of political signs as a medium of communication.

In *Peltz* v. *South Euclid* (1967), 11 Ohio St. 2d 128 [40 O.O.2d 129], the city banned all political signs except bumper stickers. The Supreme Court of Ohio declared the ordinance unconstitutional. See, also, *Pace* v. *Walton Hills* (1968), 15 Ohio St. 2d 51 [44 O.O.2d 29]. With regard to aesthetics, the *Peltz* court stated:

"* * * The ordinance in question sweeps away the right of a property owner to express his opinion on his own property. Defendant's interest in aesthetics does not reasonably outweigh the loss of plaintiff's liberty of speech." *Peltz* v. *South Euclid, supra,* at 133.

See, also, *Baldwin* v. *Redwood City, supra,* at 1370 (less restrictive means available); *Antioch* v. *Candidates' Outdoor Graphic Serv., supra,* at 59; *State* v. *Miller* (1980), 83 N.J. 402, 416 A.2d 821; *Cleveland* v. *Walters* (Feb. 15, 1979), Cuyahoga App. No. 39302, unreported; but, cf. *Members of City Council* v. *Taxpayers for Vincent, supra* (city may prohibit the posting of political signs on *public* property for aesthetic reasons).

The Supreme Court of Ohio went on to say in *Peltz* with respect to traffic that:

"The ordinance is not saved by its purpose to eliminate traffic hazards on main thoroughfares and at street intersections. The proscription is against *all* political signs, irrespective of location. Even the regulation of traffic may not be attemped by means which invade explicit constitutional liberties. *Natl. Assn. for Advancement of Colored People* v. *Alabama,* 377 U.S. 288, 12 L.Ed. 2d 325, 84 S. Ct. 1302. There is nothing in this record to convince us that a political sign is a greater traffic hazard than all the other features of the landscape which, purposely or not, tempt the attention of drivers. Furthermore, it is difficult to conceive that a political sign, reasonable in size, structure and appearance, would constitute a hazard greater than 'bumper stickers' which are expressly permitted by another ordinance of South Euclid, and which, by

definition, are not restricted to a specific locality." (Emphasis *sic.*) *Peltz* v. *South Euclid, supra,* at 133-134.

Nor can the city justify its ordinance suppressing free speech on private property by stating that political lawn signs on residential property create public nuisances or attract vandals. It is within the power of the city to enact legislation regarding the maintenance of political lawn signs, the removal of obsolete signs, and the defacing or vandalizing of political lawn signs. See *Peltz, supra,* at 133. The city has enacted similar ordinances with respect to commercial signs. See, *e.g.,* Section 1743.17, Euclid Codified Ordinances.

For all of these reasons, we conclude that the city has failed to demonstrate interests which override the private individual's right to free political expression through the use of lawn signs on his own property. Therefore, under both tests set forth by the United States Supreme Court and the tests of Ohio, we find the city's ordinance invalid. Appellants' first two assignments of error are sustained.

## II

Appellants' third assignment of error is that:

"III.   The trial court erred in taking judicial notice of facts which should have been proven to the trier of fact."

The trial court in its opinion denying appellants' motions to dismiss stated that:

"From the arguments brought before this court, from prior cases brought before this court involving political graphics and from personal experience, the court takes notice that automobiles have been driven up across sidewalks over lawns to strike down political graphics emplanted in front lawns, that political graphics have been thrown through windows, that they have been torn down by vandals, thrown out into the streets where the political

graphics are run over by automobiles causing damage to persons and property. The police are constantly called during the political season when such graphics are posted in front lawns as a result of political graphics being vandalized."

Appellants contend that these facts are not of the type that are judicially noticeable and that these facts were judicially noticed without informing appellants.

The record indicates that at the hearing on their motion, appellants, through their counsel, admitted that lawn signs are vandalized and cause litter. These facts are therefore undisputed, and the trial court may properly take judicial notice of undisputed facts. See *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93, 98 [20 O.O.3d 88]. In addition, the record is void of any request by appellants for an opportunity to be heard as to the propriety of the court's action pursuant to Evid. R. 201(E). Consequently, this assignment of error is overruled.

## III

Appellants' last assignment of error is:

"IV.   The trial court erred by considering as evidence the affidavits submitted by the city prosecutor, thereby denying appellants their rights to confront the witnesses against them secured by the Sixth Amendment to the Constitution of the United States."

The Criminal Rules permit affidavits to be attached to motions. Crim. R. 47. In fairness, the responding party is also permitted to attach affidavits to his brief in opposition. No confrontation rights are denied by this rule in this situation. Therefore, the trial court did not err in considering the affidavits attached to the city's brief in opposition to appellants' motion to dismiss. Accordingly, this assignment of error is overruled.

The judgment of the trial court is reversed, and this cause is remanded for proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

PARRINO, P.J., and RUSSO, J., concur.