OHIO STATE ASSOCIATION OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY, Appellee,

v.

JOHNSON CONTROLS, INC., Appellant.

[Cite as *Ohio State Assn. of United Assn. of Journeymen & Apprentices v. Johnson Controls, Inc.* (1997), 123 Ohio App.3d 190.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71881.

Decided Oct. 27, 1997.

*Rubenstein, Novak, Einbund & Pavlik, Frank D. Celebrezze* and *Nancy J. Fleming,* for appellee.

*Hahn, Loeser & Parks, James M. Drozdowski, Alan S. Kopit* and *Richard T. Prasse,* for appellant.

NAHRA, Judge.

Appellant, Johnson Controls, Inc. ("JCI"), appeals a bench trial in which appellee, Ohio State Association of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry ("the Association"), claimed that JCI failed to pay the prevailing wage to its employees Albert R. Bell, Todd Brayfield, Robert Gray, John D. Humphrey, and David Leroux, who worked on the Gateway Arena construction project ("Gateway") in Cleveland, Ohio. The Association complained that the JCI employees who installed the digital electronic control system for the heating, ventilation, and air conditioning ("HVAC") system did work traditionally performed by members of the pipefitting trade and

that these employees were entitled to be paid the prevailing wage as pipefitters for that work pursuant to Ohio's prevailing wage law, R.C. 4115.03 *et seq.*

The Association called thirteen witnesses at trial to present its case. It called four pipefitters, Thomas F. McHugh, David Hammer, Martin Connors, and James Monastra, to testify as to the training pipefitters receive and the work pipefitters customarily perform in their trade, and to testify as to the work which some of them saw the JCI employees perform at Gateway. The Association then called JCI employees John D. Humphrey, Albert R. Bell, Robert Gray, David Leroux, and Todd Brayfield to testify as to the work they performed at Gateway. The Association also called Gerard Mikus, a pipefitter supervisor at Reliance Mechanical, Inc., and Robert Dyer, a business agent for the Association. Additionally, the Association called its attorney, Nancy Fleming, to present evidence on damages and Richard Wood, JCI's area general manager, to authenticate the documents relied on by Fleming in compiling the claimed damages.

In its defense, JCI called Richard Wood and Marvin Hiller, JCI's manager of branch accounting. Hiller testified as to the wages actually paid John D. Humphrey, Albert R. Bell, Robert Gray, David Leroux, and Todd Brayfield, as well as stating comparisons he made to the union pay scale.

In its verdict for appellee, the court made the following findings of fact:

"1. The Ohio Association of the United Association of Journeymen and Apprentices for the Pipefitting and Plumbing Industry, is a bona fide organization of labor which represents members of the unions of pipefitters in the state of Ohio. (hereinafter 'Ohio Association').

"* * *

"3. JCI was a subcontractor for the construction of the Gateway Arena project in Cleveland, Ohio during 1993–95.

"* * *

"6. At least 60 days prior to filing this action the Ohio Association filed a prevailing wage complaint with the Director of the Department of Industrial Relations regarding pipefitter work done at the Gateway Arena project by employees of Johnson Controls, Inc.

"7. Union pipefitters in Cuyahoga County are presented by Local 120, a bona fide organization of labor.

"8. Johnson Controls, Inc. hires pipefitter members of Local 120.

"9. Thomas McHugh, a journeyman pipefitter, a member of Local 120, and an instructor at the training school of Local 120, testified that journeymen pipefitters of Local 120 receive training, provided by Local 10 [*sic*], in electronics, computers, and commissioning and calibrating electronic digital controls used in

heating, ventilation, and air conditioning systems (HVAC). Mr. McHugh also testified that he commissions and calibrates electronic digital HVAC controls and uses a laptop computer as one of the tools of his trade.

"10. Journeymen pipefitters in Local 120 who commission and calibrate electronic digital controls used in HVAC systems, including the HVAC controls of Johnson Controls, Inc. use the same tools in their work as do JCI employees.

"11. Gerard Mikus, the head of the service division of Reliance Mechanical testified that Local 120 pipefitters have commissioned and calibrated digital electronic HVAC controls on dozens of jobs for Reliance Mechanical.

"12. Given the facts of this case, the National Pneumatic Controls Systems Agreement is not binding on the parties in regard to the work performed on the Gateway Arena.

"13. Both Robert Dyer, representing the Ohio Association, and Thomas McHugh of Local 120 testified that all of the work within the jurisdiction of pipefitters in [sic] not listed in the collective bargaining agreement of Local 120 or other pipefitter locals in the State of Ohio and further it is the custom and practice of pipefitters in this locality to perform many areas of work not specified in their collective bargaining agreement, including, but not limited to the commissioning and calibration of electronic digital HVAC controls.

"14. The testimony of JCI employees and Local 120 pipefitters, as well as the testimony of Gerard Mikus demonstrates that when commissioning and calibrating digital HVAC controls, Local 120 pipefitters carry and use the same tools as the Johnson Controls, Inc. employees doing the same work, including a laptop computer.

"* * *

"16. Albert Bell, Todd Brayfield, Robert Gray, John Humphrey, and David Leroux commissioned and calibrated digital electronic controls in the Gateway Arena project in Cleveland, Ohio.

"17. The testimony demonstrates that Albert Bell, Todd Brayfield, Robert Gray, John Humphrey, and David Leroux did work on the Gateway project that is pipefitter work.

"* * *

"22. Johnson controls did not pay Albert Bell, Todd Brayfield, Robert Gray, John Humphrey, and David Leroux the prevailing wage for the work which they performed on the Gateway Arena project."

I

Appellant's first assignment of error reads:

■ "I. The trial court erred in holding that the union has standing to sue under the prevailing wage law on behalf of non–union employees of Johnson Controls who did not authorize the union to file suit on their behalf."

Appellant complains that because appellee does not represent the employees who benefit from the suit and because those employees did not authorize appellee to sue on their behalf, appellee does not have standing to bring this complaint. However, R.C. 4115.16 allows an "interested party" to file a complaint with the Administrator of the Bureau of Employment Services alleging violations of the prevailing wage law. R.C. 4115.16(A). If the administrator has failed to act within sixty days, "the interested party may file a complaint in the court of common pleas of the county in which the violation is alleged to have occurred." R.C. 4115.16(B).

R.C. 4115.03 defines an interested party as:

"(F) 'Interested party,' with respect to a particular public improvement, means:

"(1) Any person who submits a bid for the purpose of securing the award of a contract for construction of the public improvement;

"(2) Any person acting as subcontractor of a person mentioned in division (F)(1) of this section;

"(3) Any bona fide organization of labor which has as members or is authorized to represent employees of a person mentioned in division (F)(1) or (2) of this section and which exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees;

"(4) Any association having as members any of the persons mentioned in division (F)(1) or (2) of this section."

In this case, appellee has standing as an interested party even though its membership did not perform the work at question. In *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 147, 431 N.E.2d 311, 313, the court, in determining that municipalities could not exempt themselves from the prevailing wage law through local ordinance, stated:

"The prevailing wage law evidences a legislative intent to provide a comprehensive uniform framework for *inter alia,* worker rights and remedies *vis-a-vis* private contractors, sub-contractors and materialmen engaged in the construction of public improvements in this state * * *. Above all else, the primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector."

The court later reiterated its understanding of the purpose of the prevailing wage law in *Harris v. Van Hoose* (1990), 49 Ohio St.3d 24, 25–27, 550 N.E.2d 461, 462–463, and *Internatl. Union of Operating Eng., Local 18 v. Dan Wannemacher Masonry Co.* (1988), 36 Ohio St.3d 74, 76–77, 521 N.E.2d 809, 811.

Given the purpose of the prevailing wage law, labor organizations have standing to ensure that contractors pay the prevailing wage on public improvements. Contrary to appellant's arguments, a labor organization is given standing to bring a complaint on behalf of any person who is not paid the prevailing wage. To accept appellant's position would limit a labor organization's standing to only complain where its membership were not paid the prevailing wage. This position is antithetical to the purpose of the prevailing wage law as well as to the plain meaning of R.C. 4115.03(F).

In this case, appellee's membership was employed by subcontractors who performed work at Gateway. Accordingly, pursuant to R.C. 4115.03(F), appellee was an interested party entitled to bring a complaint to the Administrator of the Bureau of Employment Services and subsequently had standing to initiate this lawsuit. See R.C. 4115.16(B). Appellant's first assignment of error is overruled.

## II

We next address appellant's third assignment of error, which reads:

■ "III. The trial court committed reversible error in taking judicial notice of the 'public' nature of the gateway arena construction project."

At the close of appellee's case, the court took judicial notice that Gateway was a public improvement within the meaning of R.C. 4115.03. R.C. 4115.03 reads in part:

"(C) 'A public improvement' includes all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and all other structures or works constructed by a public authority of the state or any political subdivision thereof or by any person who, pursuant to a contract with a public authority, constructs any structure for a public authority of the state or a political subdivision thereof."

Evid.R. 201, regarding judicial notice of adjudicative facts, reads in part:

"(B) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

"* * *

"(E) Opportunity to Be Heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken."

Funding for Gateway was the subject of a countywide election and received widespread media attention. Under Evid.R. 201(B)(1), this information is "generally known within the territorial jurisdiction of the trial court." Accordingly, the court did not err in taking judicial notice of the fact that Gateway was a public improvement pursuant to R.C. 4115.03(C).

Appellant argues that the court erred because appellee did not specifically introduce evidence that Gateway did not receive federal funds. See R.C. 4115.04 (exempting public improvements receiving federal loans or grants from the application of Ohio's prevailing wage laws). However, appellant did not object to the court taking judicial notice and did not ask the court for a hearing on that issue pursuant to Evid.R. 201(E). In *Euclid v. Mabel* (1984), 19 Ohio App.3d 235, 240, 19 OBR 387, 391–392, 484 N.E.2d 249, 255, certiorari denied (1985), 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70, we noted that an appellant should request a hearing to a court taking judicial notice of an adjudicative fact by stating that "[i]n addition, the record is void of any request by appellants for an opportunity to be heard as to the propriety of the court's action pursuant to Evid.R. 201(E)."

For these reasons, appellant's third assignment of error is overruled.

### III

Appellant's second assignment of error reads:

"II. The trial court's holding that the 'systems representative' employees of Johnson Controls are entitled to the prevailing wage rate of pipefitters is contrary to law and against the manifest weight of the evidence."

Ohio's prevailing wage law provides:

"The prevailing rate of wages to be paid for a legal day's work, as prescribed in section 4115.04 of the Revised Code, to laborers, workmen, or mechanics upon public works shall not be less at any time during the life of a contract for the public work than the prevailing rate of wages then payable in the same trade or occupation in the locality where such public work is being performed, under collective bargaining agreements or understandings, between employers and bona fide organizations of labor in force at the date the contract for the public work, relating to the trade or occupation, was made, and collective bargaining agreements or understandings successor thereto.

"* * *

"The prevailing rate of wages to be paid for a legal day's work, to laborers, workmen, or mechanics, upon any material to be used in or in connection with a public work, shall be not less than the prevailing rate of wages payable for a day's work in the same trade or occupation in the locality within the state where such public work is being performed and where the material in its final or completed form is to be situated, erected, or used." R.C. 4115.05.

Appellee complains that the court erred by finding that the work Albert R. Bell, Todd Brayfield, Robert Gray, John D. Humphrey, and David Leroux performed at Gateway was pipefitter work as that finding of fact was against the manifest weight of the evidence because these employees were not "laborers, workmen, or mechanics" as specified in R.C. 4115.05, but rather were technicians.

■ "Judgments supported by some competent credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence." *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533, 536. In this case, the court relied on testimony from Thomas McHugh, who teaches classes to apprentice pipefitters, and from Gerard Mikus, who supervises pipefitters on various jobs, to determine that the installation of electronic digital controls for HVAC systems was pipefitter work. Because competent evidence exists to support the trial court's findings of fact, we will not overturn the court's judgment.

Appellant argues that the trial court's finding of fact No. 12 is erroneous because the National Pneumatic Controls Systems Agreement (the "Agreement") is binding between JCI and the pipefitters it employs and that because the Agreement does not include the installation of digital electronic controls the pipefitters cannot claim that the work is customary to their trade as determined by the court in finding of fact No. 13.

We agree with appellant that under the Agreement it had no duty to hire pipefitters to do the work at issue in this case. However, the Agreement, although relevant to the issues in this case, is not wholly determinative. The trial court relied on other competent evidence in determining that the work at issue was work customarily performed by pipefitters. Accordingly, appellant was free to hire whomever it wanted to in order to install the control system, but under Ohio's prevailing wage law it was required to pay the prevailing wage which, in this case, was that wage applicable to the pipefitting trade.

Appellant also argues that even if the work performed by JCI's employees in installing the digital electronic controls was work customarily done by pipefitters,

the limited nature of its employees' range of work and duties does not make them "laborers, workmen, or mechanics" as specified in R.C. 4115.05, but rather technicians. Appellant cites Ohio Adm.Code 4101:9–4–02(R), which states:

"(R) 'Laborer, workman, or mechanic' means a person who performs manual labor, or labor of a particular occupation, trade or craft, or who uses tools of a particular occupation, trade or craft, or who otherwise performs physical work in such occupation, trade or craft which has been approved in writing by the director through issuance of prevailing wage rate schedules for such occupations, trades or crafts."

Appellant essentially argues that because its systems representatives primarily utilize a laptop computer and small hand tools, they are not laborers, workmen, or mechanics and are therefore not subject to the prevailing wage law. We disagree with this reasoning, as the court found that the tools used by JCI employees in installing digital electronic HVAC controls were identical to those used by pipefitters when performing that task. Appellant attempts to exempt their employees from the prevailing wage law; however, the fact that its employees did not perform the full range of tasks customary to the pipefitting trade does not mean that those tasks they did perform were not customary to that of pipefitters.

Accordingly, the court's judgment was not against the manifest weight of the evidence, appellant's second assignment of error is overruled, and the judgment of the court is affirmed.

*Judgment affirmed.*

JAMES D. SWEENEY, C.J., and O'DONNELL, J., concur.