917 A.2d 1195

William CARTER

v.

STATE of Maryland.

No. 728, Sept. Term, 2005.

Court of Special Appeals of Maryland.

March 7, 2007.

Brian M. Saccenti (Nancy S. Forster, Public Defender, on brief), for appellant.

Celia Anderson Davis (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., KRAUSER and CHARLES E. MOYLAN, JR., (Retired, specially assigned), JJ.

MURPHY, C.J.

In the Circuit Court for Cecil County, a jury convicted William Carter, appellant, of two felonious violations of the Maryland Controlled Dangerous Substances Act, and of the "false statement to a law enforcement officer" offense proscribed by Md.Code Criminal Law Article, § 9–502. Appellant concedes that the State's evidence was sufficient to establish that he committed both CDS violations on April 23, 2003. He argues, however, that this Court must (1) reverse the "false statement charge," (2) vacate the other judgments of conviction, and (3) remand for both a new "suppression" hearing and a new trial. In support of those arguments, he presents four questions for our review:

1. Did the circuit court err by failing to comply with Rule 4–215 before finding that appellant had waived his right to counsel?

2. Did the judge at the suppression hearing err in relying on his own personal experience as a student in a "laser course" and his personal belief about the accuracy of lasers when making the factual determination that the speed indicated by a laser radar device was accurate and, implicitly, that appellant's assertion to the contrary was not credible?

3. Was the evidence insufficient to sustain appellant's conviction for making a false statement to a police officer while under arrest?

4. Did the trial court commit plain error by failing to instruct the jury on the elements of the false statement charge?

For the reasons that follow, we shall answer "yes" to appellant's first question, hold that appellant's second and third questions have not been preserved for our review, and—in light of these conclusions—exercise our discretion to decline the request that we engage in a "plain error" review of the jury instructions. We shall therefore direct that the judg-

ments of conviction be vacated, and the case remanded for a new trial on all charges, prior to which appellant shall have the right to move for "a supplemental hearing or a hearing de novo," pursuant to Md. Rule 4–252(h)(2)(C), on his motion to suppress the contraband seized from the automobile that he had been driving on the occasion at issue.

## I.

■ Appellant argues that he is entitled to a new trial on the ground that (in the words of his brief), "the circuit court failed to comply with Maryland Rule 4–215." The State agrees with this argument, noting that (in the words of its brief), "Carter is correct that at no time prior to the trial date or on the trial date did a circuit court judge provide the advice required by Rule 4–215(a)(1)–(5). As a consequence, reversal is required."

An overburdened criminal justice system is required to make room for a second prosecution of a defendant who has never received from the court the advice required by Md. Rule 4–215 because (1) prior to arraignment, a lawyer entered an appearance as the defendant's counsel of record, and (2) that lawyer was allowed to "withdraw" from the case prior to trial. Maryland Rule 4–214(c), in pertinent part, provides:

> If no other counsel has entered an appearance for the defendant, leave to withdraw may be granted only by order of court. The court may refuse leave to withdraw an appearance if it would unduly delay the trial of the action, would be prejudicial to any of the parties, or otherwise would not be in the interest of justice. If leave is granted and the defendant is not represented, a subpoena ... shall be ... served on the defendant for an appearance before the court for proceedings pursuant to Rule 4–215.

In the case at bar, a refusal of defense counsel's motion to withdraw would not have constituted an abuse of discretion.

## II.

■ The State's case against appellant was based upon a warrantless search of the rental car he was driving on Inter-

state 95 in Cecil County. The law enforcement officers involved in the search were Tfc. Colleen McCurdy and Tfc. Christopher Connor, both of the Maryland State Police, who (in the words of Tfc. Connor) "were working traffic enforcement together," with Connor using "a laser, a hand-held speed motion device." According to the State, shortly after noon on April 23, 2003, (1) appellant was stopped by Tfc. McCurdy after Tfc. Connor, a "certified" laser/radar operator, had calculated that appellant's vehicle was traveling at the speed of 75 mph, 10 mph above the "posted" speed of 65 mph; (2) as Tfc. Connor was writing a "warning" ticket that was to be issued to appellant, Tfc. McCurdy—a "validly certified K–9 handler," trained in "CDS detection K–9" and using a "validly certified" dog—performed a K–9 scan of appellant's vehicle, and (3) when the K–9 "alerted," the officers "went ahead and searched the vehicle."

The record shows that the following transpired at the conclusion of the pretrial hearing on appellant's motion for suppression of the contraband seized from his automobile:

[APPELLANT'S COUNSEL]: Your Honor, this is ... I think ... a visual observation of a black man driving down the road with, you know, allegedly, well, allegedly violating the speed limit. He's pulled over. He's nervous. He's got his hands up in the air. There's no other indication of criminal activity other than his nervousness which the Court of Special Appeals has said is not an indication of criminal activity or narcotics trafficking. He's pulled over, the traffic stop is prolonged. How long does it take to write a ticket? You got two officers on the highway and it transpires into a narcotics investigation.

Your Honor, it's a violation of his Fourth Amendment rights and for that reason it should be suppressed.

THE COURT: Thank you very much. Well, if it's with the Court, I believe Mr. Carter that he being from Washington DC and being stopped I can well imagine his apprehension and nervousness under those circumstances. I also believe that having personally taken a laser course and knowing what I personally believe lasers are accurate. Mr. Carter

said he thinks he was going 60, 65, 66, but compared to that we have what I consider very accurate scientific instrument, the laser, that says he was going 75, and I do believe he was speeding. So that would dispose of that.

At the stop I understand that Trooper McCurdy made the stop and pulled him over and his nervousness was very evident to her. She started to write out a warning, which may be generous, I don't know, but started to write out the warning, and at that time I think it's operational procedure for backup to appear, which Trooper Connor did show up. Both the troopers notice the nervousness of Mr. Carter, and there's no doubt about that he was nervous by his own admission, but it aroused their suspicion. And I can understand his position being nervous being from Washington DC being stopped by police, particularly two police. I can also understand the officer's position on having stopped a speeder and noticing the unusual tendencies and motions of the subject and the nervousness generated by their presence. She started to write out the ticket and when the other officer appeared she turned it over to him, and because of the nervousness of the subject it generated some apprehension for their own safety and other activities on the part of the subject, on the part of the troopers. So that's when I think that instigated and started the K–9 search. And what resulted from that I think we all found.

I do believe the officers were absolutely right in stopping the vehicle for speeding and I do believe that the activities and the general demeanor of the subject which was observed by the trooper, by both troopers, I do believe that it raised some suspicion on their part which gave them the right to conduct a search, and what resulted from the search will be up to the merits of the case when it's to be heard.

So I will deny the motion to suppress.

[PROSECUTOR]: Thank you, Your Honor.

[APPELLANT'S COUNSEL]: Thank you, Your Honor.

According to appellant (in the words of his brief):

The [suppression hearing] judge was not permitted to apply the knowledge he gained as a student in the course to his resolution of the factual dispute in the trial.

\* \* \*

If a judge cannot consider information he has gleaned from other unrelated court proceedings in a later case, then he certainly cannot consider specialized factual information learned as a student in a course. His consideration of this extra-judicial information violated the general prohibition on judges considering facts not in the record. It was also fundamentally unfair to the defendant and denied him due process of law because the defendant had no meaningful opportunity to test the reliability or accuracy of the information through cross-examination or oppose it with contrary evidence. This is especially true since the judge apparently was relying on information about laser speed measurement that he learned in a course. It is likely that such a course would have been taught by a law enforcement agency that uses the equipment or a company that sells the equipment, both of which have a vested interest in portraying the devices as accurate and reliable.

■ Due process obviously requires that a criminal defendant be "informed at the [suppression hearing or] trial of the facts of which the court is taking judicial notice, [and be afforded the] opportunity to challenge the ... truth of the facts relied upon." *Garner v. Louisiana,* 368 U.S. 157, 173–74, 82 S.Ct. 248, 256–57, 7 L.Ed.2d 207 (1961). No due process violation occurred in the case at bar. The record shows that the lawyer representing appellant at that point in the proceeding (1) stated "Thank you, Your Honor," immediately after the suppression hearing court announced its ruling, and (2) did not at any time thereafter request a "supplemental" or "de novo" suppression hearing (pursuant to Md. Rule 4–252(h)(2)(C)).

Appellant now argues (in the words of his brief) that he "was not required to object to the circuit court's ruling to preserve this issue for appeal." In support of this argument,

appellant notes that in *Johnson v. State,* 348 Md. 337, 703 A.2d 1267 (1998), the Court of Appeals reversed a death sentence on the ground that the judge who imposed sentence did not address the petitioner's "youthful age," even though the petitioner's trial counsel did not call this omission to the judge's attention after the sentence was pronounced. We are persuaded, however, that an "extra-judicial information" argument cannot be presented to an appellate court unless that argument has first been presented to the trial court.

Maryland Rule 5–201, in pertinent part, provides:

(e) **Opportunity to be heard.** Upon timely request, a party is entitled to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

This provision is derived from, and is substantially identical to, Rule 201(e) of the Federal Rules of Evidence. In a federal case, "[w]hen judicial notice is taken without warning to the parties, the aggrieved party's remedy is to request a hearing, if the case is still pending, or to petition for a rehearing." 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 201.31[4][a] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997). "[F]ailure to request a hearing [under Fed.R.Evid. 201(e)] usually renders the court's decision to take judicial notice nonappealable." 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 53 (2d ed.1994).

In *Norman v. Housing Authority of the City of Montgomery,* 836 F.2d 1292 (11th Cir.1988), the United States Court of Appeals for the Eleventh Circuit stated:

Occasionally a court will judicially notice some fact which is ordinarily not thought to be within its expertise. For example, here the court judicially noticed that the rate for bookkeepers in the Montgomery area was $35 per hour. It is proper for a court to judicially notice matters outside of the record if they are generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy

cannot reasonably be questioned. Fed.R.Evid. 201(b). Where the court does take such judicial notice on its own motion, a party is entitled to be heard on the matter if he so requests. Fed.R.Evid. 201(e). If the court does not advise the parties prior to the taking of the notice in its order, then it is obliged to hear a party on the matter if a request is seasonably made. Absent a request under Rule 201(e) for a hearing before the district court, the fact that the court took judicial notice of a fact or the tenor of the notice taken is not grounds for later appeal.

*Id.* at 1304.

■ In *Nationalist Movement v. City of Cumming, Forsyth County, Georgia,* 913 F.2d 885 (11th Cir.1990), citing *Norman* with approval, the Eleventh Circuit reaffirmed the proposition that a party's "failure to move for [a FRE 201(e) hearing] renders the *[sua sponte* judicial notice] issue nonappealable." *Id.* at 893. We agree with these decisions, which are entirely consistent with the decisions of appellate courts in other states that have rules of evidence derived from the Federal Rules of Evidence.[1]

Because we see no valid reason why the aggrieved party's remedy should be different when a Maryland trial judge has taken judicial notice *sua sponte,* we hold that the aggrieved party's failure to request that the trial court conduct a hearing on the matter precludes appellate review of the judicially noted fact. As no such request was ever presented to the circuit court, appellant is not entitled to appellate review of his claim that the suppression hearing court erred in "relying on information about laser speed measurement that he learned in a course."

---

1. *See, e.g., State v. Nunley,* 22 S.W.3d 282, 288 (Tenn.Crim.App.1999); *Kennedy v. Kennedy,* 662 So.2d 179, 183 (Miss.1995); *Ohio St. Assn. of United Assn. of Journeymen and Apprentices v. Johnson Controls, Inc.,* 123 Ohio App.3d 190, 703 N.E.2d 861, 864–65 (1997); *West Virginia Dept. of Health and Human Resources ex rel. Wright v. Brenda C.,* 197 W.Va. 468, 475 S.E.2d 560, 572 (1996); *Louisiana Land and Exploration Co. v. Wyoming Oil and Gas Conservation Com'n,* 809 P.2d 775, 779 (Wyo.1991).

For the guidance of the parties and the circuit court, we emphasize that Maryland Rule 4–252(h)(2)(C), in pertinent part, provides:

> If the court denies a motion to suppress evidence, the ruling is binding at the trial unless the court, on the motion of a defendant

> and in the exercise of its discretion, grants a supplemental hearing or a hearing de novo and rules otherwise.

On remand, appellant will be entitled to *request* a supplemental hearing or a hearing *de novo* on his motion for suppression. If such a request is made and denied, and appellant is once again convicted, he will be entitled to appellate review of the ruling denying that request.

## III. & IV.

■ Appellant's "sufficiency" argument has not been preserved for our review because at no point during the trial did appellant comply with the requirements of Md. Rule 4–324 by moving for a judgment of acquittal. On retrial, if a timely and particularized 4–324 motion is presented, we have no doubt that the circuit court will address the "sufficiency" issue.

Because appellant is entitled to a new trial, we decline to undertake a "plain error" review of the jury instructions about which he now complains.

**JUDGMENTS OF CONVICTION VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY CECIL COUNTY.**