488

LESLIE, APPELLEE, *v.* CITY OF TOLEDO ET AL., APPELLANTS.

(No. 80-1176—Decided June 24, 1981.)

*Messrs. Farrar & Lackey* and *Mr. Richard G. Farrar,* for appellee.

*Mr. John A. DeVictor, Jr.,* assistant director of law, *Cline, Bischoff & Cook Co., L.P.A.,* and *Mr. Wolfgang Drescher,* for appellants.

*Per Curiam.* Appellants contend, in essence, that (1) the city council's retention of the residential classification of the subject property is reasonable, non-arbitrary, substantially related to the public health, safety, morals or general welfare of the community and, therefore, constitutional, and (2) there was no legal justification for the Court of Appeals to order the subject property rezoned to a C-2 classification, with the aforementioned modifications.

We agree with appellants' first contention, and consequently reverse the Court of Appeals. In light of our disposition upholding the constitutionality of the Toledo ordinance, we find it unnecessary to address the propriety of court-ordered rezoning of property subsequent to a determination of the unconstitutionality of a zoning ordinance. See *Union Oil Co.* v. *Worthington* (1980), 62 Ohio St. 2d 263; *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23.

Preliminarily, we note that our decision in this case is controlled by the fundamental principle of Ohio zoning law that appellee, the party challenging a zoning ordinance, has the burden of demonstrating the unconstitutionality of such an ordinance. *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93, 95; *Hilton* v. *Toledo* (1980), 62 Ohio St. 2d 394, 396. See, generally, *Willott* v. *Beachwood* (1964), 175 Ohio St. 557. Zoning or-

dinances, enacted pursuant to a municipality's police powers, are presumed valid until the contrary is clearly shown by the party attacking the ordinance. *Brown* v. *Cleveland, supra,* at page 95; *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276, 278-279. See, generally, *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259; *Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365. For the reasons that follow, we find that appellee has failed to overcome the presumptive validity of the challenged ordinance.

The primary reason that the city council's refusal to grant appellee's rezoning request is reasonable, non-arbitrary and constitutional is simply because the subject property is located in a residential area. We have carefully reviewed the entire record in this case, including the location map provided by plaintiff, and conclude that the Court of Appeals failed to distinguish between changes that have taken place on Central Avenue, on the one hand, and changes in the neighborhood proper, on the other. The subject property is located in a neighborhood (south of Central Avenue) that has maintained its residential integrity. Indeed, as Judge Wiley observed in his dissenting opinion below, considering the five blocks of which the property involved herein is in the very center, the entire area is zoned residential with the exception of the lots east of the nearby fire station house, which are zoned C-2. As such, "[t]he mere existence of some adjacent property devoted to other uses does not destroy the character of restricted property for residential purposes or render the restrictions arbitrary." *Wilkins* v. *San Bernardino* (1946), 29 Cal. 2d 332, 344, 175 P. 2d 542. See, generally, *Urmstron* v. *North College Hill* (1961), 114 Ohio App. 213. Thus, while there are shopping centers, gasoline service stations and other commercial establishments within the general vicinity of the subject property, the residents of those portions of Middlesex, Barrington and Meadowwood Drives and Drummond and Goddard Roads, which intersect Central Avenue and lie to its south, live in an exclusively residential area.

Since the subject property is situated in such a residential setting, we do not find that the refusal of the city council, the duly-elected representatives of the people of Toledo, to rezone these four lots pursuant to appellee's request, is illegal, ar-

bitrary, confiscatory, unconstitutional or substantially unrelated to the public health, safety, morals or general welfare of the community. The city council's decision not to alter the subject property's status from residential to commercial, with the concomitant change in the neighborhood's traffic patterns, is rationally related to several hazards which the city may lawfully regulate pursuant to its police powers: protection of pedestrians and drivers, regulation of traffic congestion and on-street parking, and reduction of air and noise pollution. See, generally, *State, ex rel. Assoc. Land & Investment Corp.,* v. *Lyndhurst* (1958), 168 Ohio St. 289; Annotation, 74 A.L.R. 2d 418. As this court ruled in *Willott* v. *Beachwood, supra,* at 559-60:

"* * * It must be assumed that each councilman considered the matter independently and was aware of public opinion and formulated his own opinion of what the public welfare of his municipality demanded.

"The power of the court in such matters as this is extremely limited, and the court can not usurp the legislative function by substituting its judgment for that of the council. Municipal governing bodies are better qualified, because of their knowledge of the situation, to act upon these matters than are the courts."

In viewing the record as a whole, we conclude that the city council's retention of the residential zoning classification of the subject property is neither illegal, arbitrary, confiscatory, unconstitutional, nor substantially unrelated to the public health, safety, morals, or general welfare of the community. When a court determines, in a declaratory judgment action, that a zoning ordinance is unconstitutional, then that court may grant such relief as it deems appropriate, consistent with the guidelines set forth in *Union Oil Co.* v. *Worthington, supra.* When, however, as in the case *sub judice,* where the challenging party does not demonstrate the unconstitutionality of the ordinance and the issue is "fairly debatable," *Willott* v. *Beachwood, supra,* at 560, the court may not substitute its judgment for that of the legislative body which passed or applied the ordinance. This is yet another one of those cases where the public health, safety and general

welfare must prevail over a private developer's profit. See also, *Brown* v. *Cleveland, supra.*

Causes such as this compel us to make one final observation. As an appellate court, it is our duty to interpret, not rewrite, the law, as it is embodied in a city's zoning code. No appellate court, under the guise of judicial review, should nullify the zoning code, which has been written and adopted by the members of a city council, the duly-elected representatives of the people. It is better to leave the formulation and implementation of zoning policy to the city council, or other legislative body, which has not only the expertise and staff, but also, the constitutional responsibility to police this area effectively. Toledo's or, for that matter, any city's zoning code should not be judicially amended simply because the judges of this court, or any court, would have made a different decision if they had been members of the city council. It is our firm conviction that, absent clear constitutional, statutory or procedural error, a reviewing court is not free to impose its judgment on the city council.

As Justice (later Chief Justice) O'Neill pursuasively stated in *Willott* v. *Beachwood, supra,* at page 560:

"The determination of the question of whether regulations prescribed by a zoning ordinance have a real or substantial relation to the public health, safety, morals or general welfare is committed, in the first instance, to the judgment and discretion of the legislative body. Where such a judgment deals with the control of traffic, volume of traffic, burden of traffic, effect upon valuation of property, the municipal revenue to be produced for the city, expense of the improvement, land use consistent with the general welfare and development of the community as a whole, or, in short, where the judgment is concerned with what is beneficial or detrimental to good community planning, it is in the first instance a legislative and not a judicial matter. The legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations, and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable.

"Even though the court, on the facts presented, might decide otherwise than did council, so long as the matter is

reasonably debatable, the court has no authority to interfere. The power of a municipality to establish zones, to classify property, to control traffic and to determine land-use policy is a legislative function which will not be interfered with by the courts unless such power is exercised in such an arbitrary, confiscatory or unreasonable manner as to be in violation of constitutional guaranties."

For all the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., SWEENEY, LOCHER, HOLMES and BLACK, JJ., concur.

W. BROWN and P. BROWN, JJ., dissent.

BLACK, J., of the First Appellate District, sitting for C. BROWN, J.

WILLIAM B. BROWN, J., dissenting. The Court of Appeals concluded, based upon the record, that the subject parcels "are accompanied almost entirely by non-residential structures" and that for the last 25 years there has been no single family use along Central Avenue on the north side. Moreover, no other single-family residential structures have been built facing Central Avenue in the area surrounding the subject parcels since the early 1950's. Given these factual considerations, I would find the Toledo City Council's retention of an R-2 zoning classification to be illegal, arbitrary and confiscatory, and, therefore, unconstitutional.

PAUL W. BROWN, J., dissenting. Obsolescence in comprehensive zoning schemes is a constant problem. As such changes occur, the necessary connection between zoning limitation on private property and the police power erodes. To say there is an observable lag between the rapid changes which occurred in the post World War II period which gave rise to the problem here addressed and voluntary legislative rezoning, reacting and adjusting to such changes, is to understate the problem. This lag is dramatic when one considers that in spite of population shifts occasioned by construction of intrastate highway systems, including municipal inner

belts and outer belts (federally schemed and funded and now substantially complete), and, further, in spite of changes occasioned by the much commented upon residential "flight to the suburbs," little or no voluntary comprehensive legislative rezoning has occurred.

As a result, property owners with undeniably creditable claims of hardship resulting from such total obsolescence of overall comprehensive zoning, having no way of forcing comprehensive rezoning of the areas in which their properties lie, are required to rely upon individual applications addressed to administrative or legislative discretion and documented by evidence of hardship arising out of restrictions of use bearing so harshly upon a particular parcel that the loss of value is no longer justified by a sufficiently demonstrable connection with the police power. This is to say that the need for the restricted use and the public benefit are so out of balance as to raise constitutional doubts.

The usual method of attacking this problem is by applying to the proper administrative body for a variance and appealing that body's decision under R. C. Chapter 2506 to the common pleas court if the application proves unsuccessful. *State, ex rel. Sibarco Corp., v. Berea* (1966), 7 Ohio St. 2d 85. In such cases the evidentiary test of sufficiency relates to the reasonableness of the requested use or the unreasonableness of the agency's refusal. *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202, 207.

Under more and more municipal schemes, however, administrative pressures or ordinances enacted pursuant to city charters require that after negotiation between the property owner and a zoning advisory commission, a conditional rezoning is legislatively enacted approving a specific upgraded use. See Stefanik, The Status of Conditional Rezoning in Illinois — An Argument to Sustain a Flexible Zoning Tool, 63 Ill. Bar J. 132.

From the record it would appear that some variant of such a scheme was followed by the applicant herein, and after approval by the zoning administrative body it was rejected by the city council.

Often, municipal schemes specify that a city council so acting is sitting in its administrative capacity and thus a R. C.

2506 administrative appeal is available. Where, as here, there is no claim that the applicant had failed to exhaust his administrative remedies, it becomes equally clear that the right to appeal both the reasonableness of the refusal or the sufficiency of the connection between the restriction and the police power is by way of an application for a declaratory judgment in the common pleas court. *Driscoll* v. *Austintown Associates* (1975), 42 Ohio St. 2d 263; *Gates Mills Investment Co.* v. *Pepper Pike* (1975), 44 Ohio St. 2d 73.

This was done here and it is my view that the resulting trial is generally, and was here specifically, identical in all but form with a R. C. Chapter 2506 appeal, and the test of the reasonableness of the refusal and the sufficiency of present connection with the police power should apply. This is because an individual is being put to the test largely because an obsolescent comprehensive zoning plan has become unconstitutional as to its application to his property.

Applying this test, I conclude that the Court of Appeals properly reversed the trial court and fashioned a noteworthy and restrained order so as to not leave the parcel in question unzoned.

The majority, however, applies the test contained in *Willott* v. *Beachwood* (1964), 175 Ohio St. 557, asserting that legislative action can be successfully challenged only if it is arbitrary, confiscatory, unconstitutional or substantially unrelated to public health, safety, morals or general welfare of the community. *Willott* v. *Beachwood* concerned an 80-acre shopping center designation. The rights challenged were not those of the individual property owner but those of adjacent and remote residents in the surrounding community who challenged the impact of the shopping center upon their properties. Clearly, the rule applicable to deciding where large shopping centers may be placed to provide the most convenient access with the least avoidable hardship is inappropriate to cases which concern only hardship resulting from obsolescent comprehensive zoning schemes.

City councils cannot be given so broad a power in such cases that their decisions are substantially unreviewable, for then their decisions may be based solely upon a hand count of those present objecting to the change. Thus, constitutional

496

questions historically ultimately justiciable become less so. To apply *Willott* to hardship cases concerning individual parcels is to say that variant uses unreasonably denied cannot be judicially reviewed if debatable merely because the change sought must be legislatively approved under a local ordinance, while in all other cases courts are empowered to review and grant such applications if the restriction has become unreasonable by changes occasioned by the passage of years. The line drawn is not a fine one, but if it were, there should still be no such line.

I would affirm the order of the Court of Appeals.

W. BROWN, J., concurs in the foregoing dissenting opinion.