OPINION
Plaintiffs-appellants, the city of Oxford (the "city") and the city of Oxford Board of Zoning Appeals (the "Board"), appeal a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Kay's Rentals, Inc. ("Kay's Rentals"). That judgment estops the city from enforcing its planning and zoning code (the "Zoning Code") against Kay's Rentals.
In its August 9, 1996 decision granting summary judgment in favor of Kay's Rentals, the trial court succinctly explained the nature of the present controversy between the parties as follows:
 In 1987, Clifford and Catherine Zimmer, the principals of Kay's Rentals, an Ohio corporation, purchased a dwelling located at 119 N. College Avenue in Oxford, Ohio. Before the purchase, the Zimmers made clear to the listing agent, Bill Maxwell, that they would only purchase the property if they could rent it to nine students. Maxwell, in turn, contacted William Churchman, Oxford's Housing Inspector in charge of approving rental permits, and asked Churchman if Oxford would issue a rental housing permit for up to nine people on the property.
 Subsequently, Churchman visited the property to conduct an inspection. After conducting his investigation, Churchman informed Kay's Rentals that the city of Oxford would issue a rental housing permit for as many as nine people for the property. In reliance, Kay's Rentals purchased the property for $103,000.
 In August of 1988, Kay's Rentals applied for and received a rental housing permit for a maximum of nine students from Oxford's Department of Safety, Division of Housing. The permit as a "lodging house" was executed by Churchman. Under Oxford's Zoning Code sec. 1121.01, a lodging house is defined as:
 "A dwelling where lodging, but not meals, is provided for compensation for no more than 12 persons who are not transients or members of the owner's family, and do not live as a single housekeeping unit in a family-like environment on a relatively permanent basis, and in which no cooking or dining facilities are provided in individual rooms."
 Pursuant to the Zoning Code, lodging houses are permitted in areas zoned R-5, C-3, and C-4. However, the subject property is located in an area zoned R-4B. The permit was not in conformity with the zoning regulation. Oxford issued the same permit to Kay's Rentals in 1989, 1990, and 1991 while renting the house to eight or nine students per year. In 1993, Oxford refused to issue such permit and instead began issuing conditional permits with the commencement of this action.
On July 8, 1993, appellants and Stuart Meck, then the city's zoning administrator, filed a complaint for declaratory judgment in the trial court against Dennis and Barbara Day, Louise Brady dba Milopa, and William A. Phillips, asking the trial court to determine the city's right to enforce its Zoning Code against the foregoing defendants. The complaint stated that after Meck refused to issue zoning permits for the defendants, they appealed his decision to the Board.
The complaint was subsequently amended on April 12, 1994 to list as defendants eighty property owners[1] who might be in violation of the Zoning Code and/or the city's housing code (the "Housing Code"). The listed property owners included the defendants named in the original complaint and Kay's Rentals. The amended complaint also specifically asked the trial court to determine whether the city was estopped from enforcing its Zoning Code and/or its Housing Code against the defendants who had been erroneously issued rental housing permits and who had relied on such permits.
By entry filed the same day, the trial court allowed Meck to "withdraw his name as a party plaintiff" to the action. A second amended complaint filed on July 1, 1994 added Joseph L. and Mary P. Burns as defendants. On March 10, 1995, Kay's Rentals filed a motion for summary judgment in which it asserted that the city should be equitably estopped[2] from enforcing its Zoning and Housing Codes against Kay's Rentals. Appellants filed a crossmotion for summary judgment on April 6, 1995.
By decision filed August 9, 1996, the trial court found that the doctrine of equitable estoppel applied to the city, thereby preventing the city from enforcing its Zoning Code against Kay's Rentals. Summary judgment was subsequently granted in favor of Kay's Rentals by entry filed August 26, 1996. Appellants now appeal, raising the following three assignments of error:
Assignment of Error No. 1:
 The Trial Court Erred To The Prejudice Of The City By Granting Kay's Rentals, Inc.'s Motion For Summary Judgment.
Assignment of Error No. 2:
 The Trial Court Erred By Weighing The Equities Of The Matter Without Taking Into Account The Ohio Supreme Court's Mandate That The Public Interest Outweighs A Private Developer's Profit.
Assignment of Error No 3:
 The Trial Court Erred To The Prejudice Of The City By Denying The City's Motion For Summary Judgment.
Civ.R. 56(C) provides in part that summary judgment shall be rendered where there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. A genuine issue of material fact exists when the relevant factual allegations in the pleadings, affidavits, depositions, or interrogatories are in conflict. Duke v. Sanymetal Prod. Co., Inc. (1972), 31 Ohio App.2d 78, 81.
An appellate court must independently review the record to determine if summary judgment was appropriate. Thus, an appellate court affords no deference to the trial court's decision while making its own judgment. Schwartz v. Bank One, Portsmouth, N.A. (1992), 84 Ohio App.3d 806, 809.
In their first assignment of error, appellants argue that the trial court erred in granting summary judgment in favor of Kay's Rentals. Specifically, appellants argue that the trial court erred in determining that the city was estopped from enforcing its Zoning Code because (1) equitable estoppel does not apply to the exercise of a governmental function; (2) equitable estoppel does not apply to the exercise of police powers; (3) equitable estoppel does not apply if the acts were ultra vires; and (4) equitable estoppel does not apply when the defendant fails to prove reasonable reliance.
"Equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon that conduct." London Lancashire Indem. Co. v. Fairbanks Steam Shovel Co. (1925), 112 Ohio St. 136, 152. The elements of equitable estoppel require that first there be a factual representation by words, acts or silence or concealment of a material fact (or at least a position contrary to that now taken). The facts underlying the representation must be known to the party at the time he makes it, or circumstances must be such that knowledge is chargeable to him. Second, the representation must be misleading. Third, the representation must induce actual reliance by the second party and such reliance must be reasonable under the circumstances and in good faith. Fourth, the relying party would suffer prejudice or pecuniary disadvantage if the first party is not estopped from asserting an otherwise valid right in contradiction to his earlier representation. First Fed. S. L. Assn. v. Perry's Landing, Inc. (1983), 11 Ohio App.3d 135, 145. See, also, Whiteco Metrocom, Inc. v. Columbus (1994), 94 Ohio App.3d 185, 191.
Appellants first argue that equitable estoppel never applies to a municipal corporation in the exercise of a governmental function to protect the public interest. Appellants cite several decisions of the Supreme Court of Ohio in support of their argument, including Ohio State Bd. of Pharmacy v. Frantz (1990),51 Ohio St.3d 143, 145-146.
After reviewing the supreme court decisions cited by appellants including Frantz, we find that appellants are mistaken as to the applicability of the doctrine of equitable estoppel to municipal corporations. Contrary to appellants' contention, the foregoing supreme court decisions do not stand for the absolute proposition that equitable estoppel can never apply to a municipal corporation. Rather, as Judge Harsha aptly stated, dissenting in Athens Cty. Property Owners Assn., Inc. v. Athens (Aug. 26, 1992), Athens App. No. 1482, unreported, at 4-5, "the usual rule [is] that equitable estoppel will generally not be applied against a municipal corporation in the exercise of a governmental function. [See, also, Frantz,51 Ohio St.3d at 145-146 (as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function).] However, the Ohio Supreme Court has continually indicated that its reluctance to impose that doctrine relates more to the specific facts of the case, i.e., application, rather than an absolute bar to the availability of the doctrine as a legal defense."
Appellants also cite this court's decision in Williamsburg v. Milton (1993), 85 Ohio App.3d 215, as being directly on point and requiring the disposition of this case in their favor. We disagree. In Williamsburg, the defendants applied for a zoning permit regarding mobile homes. The permit was at first granted by the zoning administrator, who later revoked it for the reason he lacked the authority to issue it. On appeal, we rejected the defendants' claim that the village of Williamsburg was estopped from denying the permit's validity on the grounds that the permit was undoubtedly invalid and the defendants were charged with notice of the statutory limitations of the zoning administrator's authority. Id. at 219.
Unlike in the case at bar, the zoning ordinance under which the zoning permit was issued in Williamsburg clearly provided that only the board of zoning appeals had the statutory authority to issue such permit. Had the defendants referred to the zoning ordinance, they would indisputably have been warned of the zoning ordinance's statutory limitations of the zoning administrator's authority. In the case at bar, the rental permits were issued by the city's housing inspector. The city's Housing Code specifically gives the authority to issue rental permits to the housing inspector and to him only. Unlike in Williamsburg, a reading of the Housing Code reveals no zoning limitations as to the authority and duties of the housing inspector. Thus, had Kay's Rentals investigated the limits of the housing inspector's authority, it would have learned that he was the only person with the authority to issue and renew rental permits. It would not have learned that the housing inspector should have issued rental permits with reference to the Zoning Code because the Housing Code did not require it. We therefore find that Williamsburg is factually distinguishable from the case at bar and that its holding does not apply here.
Appellants also argue that equitable estoppel does not apply to the exercise of police powers. It is undisputed that the authority of a municipality to enact a zoning ordinance is well-recognized as a lawful exercise of the police power. However, we have not found, and appellants have not cited any Ohio Supreme Court decisions holding that equitable estoppel does not apply to the exercise of police powers. In light of the supreme court's position that the principle of estoppel will generally not be applied against a municipal corporation in the exercise of a governmental function, Frantz,51 Ohio St.3d at 145-146, we decline to follow and/or adopt appellants' absolute rule in the case at bar.
Third, appellants argue that since equitable estoppel does not apply to ultra vires acts, and since the housing inspector's issuance or renewal of rental permits was ultra vires, the trial court erred in finding that the doctrine of equitable estoppel applied to the case at bar.
It is well-established that "a municipality will be bound only by representations authorized to be made by its officers and agents." Whiteco, 94 Ohio App.3d at 192. "A municipality may be estopped by the acts of its officers if done within the scope and in the course of their authority or employment, but estoppel does not arise if the act done is in violation of the law." Kilko v. Cleveland (App. 1951), 60 Ohio Law Abs. 561, 565. In addition, equitable estoppel does not apply where the subject matter involved is ultra vires or illegal. See Baxter v. Manchester (1940), 64 Ohio App. 220, 225-226.
It is appellants' contention that William Churchman, the city's housing inspector, had no authority to issue a permit for a lodging house in a residential area that prohibits lodging houses. Because he did so, appellants contend that Churchman's acts were clearly ultra vires. We disagree for the following reasons.
A review of the Housing Code clearly shows that housing inspectors are the only individuals that are authorized to issue, review, and renew rental permits. Thus, Churchman and Philip O. Morrical, III, who became a housing inspector in 1986/1987 to help Churchman, had the statutory authority to issue rental permits.
However, it is undisputed that while, pursuant to the Zoning Code, lodging houses are permitted only in the R-5, C-3, and C-4 districts, the lodging house operated by Kay's Rentals, and for which a rental permit was first issued and consistently renewed for several years, is located in the R-4B district. A review of the Zoning Code shows, however, that while it was enacted in 1979, its provision allowing lodging houses solely in the R-5, C-3, and C-4 districts was not passed until December 6, 1988. While Section 1129.06 of the Zoning Code does not list lodging houses as permitted uses in the "R-4B urban multiple-dwelling district" (but makes exception for nonconforming uses), Section 82.14 of the previous 1967 Zoning Code allows lodging houses in the "R-4 multiple dwelling district." Appellants have not presented any evidence that the R-4 and R-4B districts were different in nature and in purpose.
The record shows that before June 1979, the property now operated by Kay's Rentals was rented as a single family dwelling. In his deposition, Churchman testified that there were eight or nine people living in that property before Kay's Rentals bought it. Churchman further testified that after he inspected the property, as required under the Housing Code, he made the determination to issue a rental permit for up to nine persons based upon the previous use and number of occupants of the house and based upon the number of bedrooms. Churchman testified that until Meck became his supervisor in the late 1980s, he customarily issued rental permits if the inspected building was a pre-existing structure which had been issued a permit in the previous years. Dennis R. Stuckey, Oxford's city manager from 1983 to 1992, testified that "an existing rental permit on a building * * * should establish what the terms of that particular piece of property were."
The record also shows that such practice by Churchman was sanctioned, at least with regard to renewal of permits, by both Meck and Stuckey as evidenced by the following affidavit:
 Now comes G. COE POTTER, affiant herein, who after being duly sworn, does hereby depose and state as follows:
 1. That I was and am the managing broker for Alpha Re/Max Inc., formerly Alpha Inc., a real estate brokerage company operating in Oxford, Ohio.
 2. That sometime in 1987 or 1988, I requested that Stuart Meck, the Oxford Zoning Administrator, and William Churchman, the Oxford Housing Inspector come to a meeting of the real estate sales associates employed by Alpha Inc. for the purpose of clarification and guidance with respect to the policy for issuance of rental permits in the City of Oxford.
 3. That said Zoning Administrator and Housing Inspector consented to such a meeting and such a meeting was held at the offices of Alpha Inc. at 33 West Walnut Street, Oxford, Ohio 45056.
 4. That the Zoning Administrator and Housing Inspector were specifically asked about a rental permit issued for the property commonly known as 123 North Beech Street, Oxford, Ohio, authorizing a lodging house use in an R4B Zone. I and my employees knew that the lodging house use of said property had begun subsequent to the enactment of the Oxford Zoning Code in 1979.
 5. That in light of the fact that the Oxford City Ordinances did not authorize lodging house use in a R4B Zone, both the Zoning Administrator and Housing Inspector were asked whether or not the Alpha employees could represent, to prospective buyers, real property such as the property at 123 North Beech Street, Oxford, Ohio as a lawfully existing lodging house.
 6. That both the Zoning Administrator and Housing Inspector stated in response to the aforementioned question, that the lodging house use was the lawful use of said property and could be represented as such by virtue of the fact that the Housing Inspector had previously issued rental permits authorizing said use for said property. I and my sales associates were told that once the rental permit had been issued as heretofore described, that it would continue to be issued.
A staff report dated July 29, 1987 from Meck to both Churchman and Morrical specifically requested both housing inspectors to check with Meck "on the issuance of new * * * permits to insure that the use complies with the zoning code requirements for the district the dwelling unit or units are located." While the report also stated that a zoning permit was necessary if the applicant was requesting a housing permit increasing the number of dwelling units or occupants, (which was not the case for Kay's Rentals' property), no request was made in the report that renewal of permits had to comply with the Zoning Code.
In his deposition, Churchman confirmed that following the foregoing report, if an inspected property had never been rented before, he could not issue a rental permit. Morrical similarly testified. Churchman testified however that with regard to the renewal of permits, Churchman continued to renew rental permits without Meck's consent and that Meck never objected. Churchman also testified that when Meck explained to him in which districts lodging houses were allowed, Churchman asked Meck "what about the places that are already there * * *," to which Meck replied "well, they are already established."
In light of all of the foregoing, we find that the action of Churchman in issuing and then renewing the rental permit for Kay's Rentals "was one of the functions of his employment." Village of Brady Lake v. Guinaugh (Jan. 20, 1976), Portage App. No. 653, unreported.[3] Although the action was retroactively found to be improper, it was not an ultra vires act. Kay's Rentals went to the very person and office charged with the enforcement of the Housing Code and obtained a rental permit for a lodging house in a residential zone.
Appellants argue, however, that in light of the clear integration of the Zoning Code into the Housing Code through Section1341.16(d) of the Housing Code, Churchman's actions were ultra vires. Again, we disagree.
Section 1341.16(d) provides:
 The building code, the sanitary code, and all other City codes and regulations prescribing standards for the construction, operation or maintenance of buildings or property, including the codes by adoption and amendments thereto, are hereby specifically incorporated into this chapter as if their provisions were rewritten herein and the provisions, regulations, requirements or standards of such code or codes or regulations are applicable to this application of this chapter.
We disagree with appellants that the foregoing provision incorporates the Zoning Code into the Housing Code and that as a result, Churchman should have reviewed the Zoning Code before issuing a permit to Kay's Rentals. Unlike the building and sanitary codes, which are expressly identified, the only reference to the Zoning Code is embodied in the expression "and all other City codes * * * prescribing standards for the construction, operation or maintenance of buildings or property * * *." In light of the fact that (1) Churchman testified he was never trained in zoning law and never told to review the Zoning Code before renewing a permit, (2) neither code creates an integration of duties and procedures between the two departments, and (3) the Housing Code, while setting out in great detail and specificity the procedure to be followed by a housing inspector for the issuance, renewal, or revocation of a rental permit, never once refers to the Zoning Code, zoning permits, or the zoning administrator, we find that there is no statutory link between both codes that would mandate a housing inspector or a prospective buyer to review the Zoning Code in addition to the Housing Code.
In light of all of the foregoing, we therefore find that Churchman's actions in first issuing and then renewing rental permits to Kay's Rentals were not ultra vires.
Finally, appellants argue that it was error for the trial court to find that equitable estoppel applied because Kay's Rentals failed, by any standard of proof, to establish reasonable reliance. Appellants contend that the trial court erred in holding that Kay's Rentals reasonably relied on Churchman's statement because each person is presumed to know the law.
It is well-established that "estoppel may apply where a municipality made a representation, which was within its power to make and which induced reliance." Pilot Oil Corp. v. Ohio Dept. of Trans. (1995), 102 Ohio App.3d 278, 283. "[R]eliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." Frantz, 51 Ohio St.3d at 145.
While it is well-established that as a general rule each person is presumed to know the law, we find that a better rule with regard to the reliance element of equitable estoppel is that "persons dealing with municipal corporations are charged with notice of all statutory limitations on the power of such corporations and their agents * * *." Williamsburg,85 Ohio App.3d at 219. Were the presumption applied in an absolute manner, as argued by appellants, it would completely bar the application of equitable estoppel against municipalities.
It is undisputed that in reliance upon Churchman's statement that the city would grant a rental permit for as many as nine unrelated tenants, Kay's Rentals purchased the property located at 119 N. College Avenue. Unlike appellants, however, we do not think that the resolution of this case depends solely on Kay's Rentals' reliance on Churchman's statement. As already noted, a municipality may be estopped if it made a representation which was within its power and which induced reliance. Pilot Oil Corp.,102 Ohio App.3d at 283.
The record shows that Kay's Rentals obtained a rental permit from the department thought to have, and which according to the Housing Code had, the authority to issue such permits. As already noted, a reading of the Housing Code would not have alerted Kay's Rentals of the need to review the Zoning Code or contact the zoning administrator. In his deposition, Morrical admitted that there was nothing in the Housing Code requiring a prospective buyer to first go to the zoning administrator to obtain or renew a rental permit. In his deposition, Stuckey testified that had any prospective buyers called him to inquire about rentability of properties, he would have encouraged them to talk to Churchman. Stuckey also testified that Churchman had a lot of experience in the housing area and that prospective buyers would be correct in relying upon what the housing inspector told them with regard to rental inquiries.
The record also shows that in July 1988, a real estate broker from Oxford met with Stuckey and Meck and expressed his concern as to "whether or not rental permits were being issued according to the same criteria in all parts of the City." While Meck expressed concern, Stuckey, then the city's manager, "indicated that rental permits issued by Mr. Churchman were valid and that it was `business as usual' * * * with respect to the sale of rental properties having rental permits."
The record further shows that while concerns were raised over the years about Churchman's issuance of rental permits, nothing was done until 1992. Morrical testified that he approached Stuckey but that to his knowledge, Stuckey had done nothing about it although Morrical admitted that Stuckey had asked him for some names and a list of places. Stuckey testified that he too had concerns as to whether Churchman appropriately issued permits, but that in each situation he had reviewed, he was satisfied that the permits were appropriately issued. Morrical also testified that within two years after he became a housing inspector, he approached the members of the city's council as individuals and told them about his concerns and the lack of action by Stuckey. Morrical testified that council took no action until 1992.
Thus, the record shows that while the city's manager and the city's council were notified of the concerns raised by Morrical and Meck over Churchman's actions, nothing was done until 1992. In light of (1) Churchman's statement to Kay's Rentals that the city would issue a rental permit, (2) Stuckey's assurance that permits issued by Churchman were valid, (3) Stuckey's testimony that prospective buyers' reliance on Churchman's statements would be appropriate, and (4) the total lack of action by city council for several years despite the concerns raised over Churchman's actions, we find that Kay's Rentals' reliance was reasonable under the circumstances and in good faith. Perry's Landing, Inc.,11 Ohio App.3d at 145.
We therefore conclude that the trial court did not err in finding that equitable estoppel applied to the case at bar. Appellant's first assignment of error is overruled.
In their second assignment of error, appellants argue that the trial court erred in weighing the equities in favor of Kay's Rentals. Appellants contend that the trial court's weighing was in violation of the Ohio Supreme Court's mandate in Leslie v. Toledo (1981), 66 Ohio St.2d 488, that the public interest outweighs a private developer's profits. Appellants further contend that the trial court's weighing was in violation of this court's decision in Kroeger v. Standard Oil Co., Inc. (Aug. 7, 1989), Clermont App. Nos. CA88-11-086, CA88-11-087, unreported, in which we stated that "it is well settled that where equities are equal, the law prevails."
In finding that equitable estoppel applied to the case at bar, the trial court stated that "[t]here is evidence before the court that Kay's Rentals investment will decline $75,000 to $80,000 if Oxford is not estopped." The trial court further stated:
 Finally, it is important to note that this case did not present any health or safety issues. If the court had been presented with evidence of health or fire code violations, this court would not impose an equitable estoppel against Oxford. It is imperative that the safety of the renters come first. However, because no such issues are before the court, the Defendant is entitled to equitable estoppel.
After reviewing the supreme court's decision in Leslie, we find that it has no application to the case at bar for the following reasons. First, the issue before the court was not the applicability of the doctrine of equitable estoppel but rather the constitutionality of a zoning ordinance. In fact, the doctrine of equitable estoppel was never asserted. Second, contrary to appellants' assertion, the supreme court's decision does not stand for the general mandate that public health, safety, and general welfare must prevail over a private developer's profit. Rather, in finding that the challenged zoning ordinance was not unconstitutional, the supreme court stated in part that
 When, however, as in the case sub judice, where the challenging party does not demonstrate the unconstitutionality of the ordinance and the issue is "fairly debatable," * * * the court may not substitute its judgment for that of the legislative body which passed or applied the ordinance. This is yet another one of those cases where the public health, safety and general welfare must prevail over a private developer's profit.
Leslie, 66 Ohio St.2d at 491-492.
With regard to our decision in Kroeger, appellants correctly cite it for the proposition that "where equities are equal, the law prevails." However, after reviewing the record before us, we find that there is no evidence that the equities involved in this case are equal.
Appellants summarily claim that "the City's position arises out of the public's interest in the health, safety, and general welfare of all of the City's residents * * *." However, Civ.R. 56(E) clearly provides that once a party moves for summary judgment and has supported his motion by sufficient and acceptable evidence, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but has a reciprocal burden to respond by affidavit or as provided in Civ.R. 56(C).
In the case at bar, while appellants listed the effects of not enforcing the Zoning Code upon residents of the city as "the safety issues and concerns that have arisen, the lack of affordable housing and other quality of life issues confronting [the city's nonrental property owners] which have arisen from past actions[,]" appellants presented absolutely no evidence to substantiate their claims. Nor have appellants presented any evidence that the denial of rental permits would promote public health, safety, and general welfare.
Because "resting on mere allegations against a motion for summary judgment and eschewing the mandate of Civ.R. 56(E) is insufficient[,]" King v. K.R. Wilson Co. (1983), 8 Ohio St.3d 9,11, we find that the trial court properly weighed the equities in favor of Kay's Rentals. Appellants' second assignment of error is overruled.
In their third assignment of error, appellants argue that the trial court erred in denying their cross-motion for summary judgment. It is axiomatic that once a trial court grants summary judgment in favor of one party, it cannot also grant summary judgment in favor of the opposing party on the same issues. In light of our holding under appellants' first assignment of error that equitable estoppel applies to the case at bar and thus, that the trial court properly granted summary judgment in favor of Kay's Rentals, we find that the trial court did not err in denying appellants' crossmotion for summary judgment. Appellants' third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
 APPENDIX A
By amended complaint filed April 12, 1994, the following property owners were named as defendants:
Dennis and Barbara Day
Star Bank, N.A. Trustee
Louis Hautau, Tr.
Timothy H. and Sally C. Myers
Myron A. Mesler
Jeanette Baker
Frazer W. Maxwell
Ned C. Hoelzer CPA, Inc.
Opal B. Wespiser
Christopher M. Rodbro, Jr.
Joseph and Virginia Neisch
Philip O. Morrical, Jr.
Jack L. Fryman
Robert F. and Alice J. Schuette
William and Gladys Phillips
Howard O. and Marjorie E. Hart
Warren L. and Bonnie Mason
Gordon W. Baker
Nancy Giambra
Jeffrey D. Day
Julia A. Lonsberry
William J. and Mary Thomas
Kay Rentals, Inc.
Howard W. Hudgins
Jack and Donna Thacker
Ned C. Hoezler, Tr.
David K. Schmitt
Larry T. Brehm
Roger Perry
Ned C. and Vickie Hoelzer
Lawrence Wayne Morrison
Beechnut Rentals PRT
Leonard M. Giambra
Frances L. Mesler
James Clawson
Brian D. Kelley
Robert Ciampa
Brian Clawson
Clifford E. and Alma Biltz
David L. and Terry L. Thomas
Mary Jane Fryman
Daniel F. and Helen Wozniak
Pentagon Properties PRT
Eldred L. and Martha S. Brown
Steven D. and Judy L. Ramsey
Robert L. Blackburn
C M Investments
Helen Louis Corbin
Wayne and Connie L. Brack
Lewis E. and Caroline Hollis
First Baptist Church of Oxford
Dorothy M. and Lorene Benz
Hugh W. and Barbara B. Clawson
Nona B. Darling
H. Ralph and Florence L. Jones
James R. and Irene L. Hunter
Lew Hollinger
Hoelzer-Folker-Huss
Ronald L. Wiley
[1] The names of the property owners listed in the first amended complaint are listed in Appendix A attached to this opinion.
[2] Kay's Rentals raised the defense of equitable estoppel also in its answer filed on May 10, 1994.
[3] Contrary to appellant's contention, the Eleventh Appellate District has neither abandoned nor reversed this position in Brown v. Ohio State Racing Comm. (June 27, 1997), Geauga App. No. 96-G-1998. The court merely stated that "the principle of estoppel is generally inapplicable to the state or its agencies in the exercise of governmental functions."