OPINION
{¶ 1} Plaintiffs-appellants, Charles J. Arendas, et al., appeal a decision of the Mahoning County Common Pleas Court declaring that the present zoning of their property as residential is constitutional.
 {¶ 2} Plaintiffs-appellants, Charles J. and Deborah J. Arendas (Arendas), own property identified as Lots 25 and 26 and located on Upland Avenue in Coitsville Township, Mahoning County, Ohio. The lots have separate, single family homes located on them. Plaintiffs-appellants, Cocca Properties 4 LLC and Cocca Development Ltd. (Cocca), own adjoining Lots 27 through 30. Those lots are vacant lots. All of the lots owned by the Arendas and Cocca (hereinafter referred to collectively as appellants) are zoned residential under the Coitsville Township Zoning Resolution.
 {¶ 3} On April 15, 2005, appellants asked township authorities to re-zone the lots from residential to commercial. The crux of their argument was that the area no longer maintained its "residential integrity and character." They wanted to use their property for the site of a new "Dollar General Store," a retail business operation. The Mahoning County Planning Commission recommended approval of the proposed zone change. Following a public hearing on the request, the Zoning Commission recommended denial of the zone change to the Board of Trustees. Following another, subsequent public hearing, the Board of Trustees voted to deny the requested zone change pursuant to R.C. 519.12.
 {¶ 4} On November 7, 2005, appellants filed an amended complaint seeking (1) a declaratory judgment that the zoning regulation was unconstitutional as applied to their property and (2) mandamus relief to compel public authorities to institute eminent domain proceedings. The complaint named as parties defendant Board of Trustees of Township of Coitsville, Coitsville Township Zoning Commission, Zoning Inspector David Ornelas (hereinafter referred to collectively as appellees), and Mahoning County Planning Commission. By agreement of the parties, appellants subsequently dismissed their action against Mahoning County Planning Commission without prejudice. *Page 2 
 {¶ 5} The parties agreed that the declaratory judgment claim would proceed to adjudication before the mandamus action and that the material facts as they pertained to the declaratory judgment claim were not in dispute. Therefore, the constitutionality of the zoning classification as applied to appellants' property was submitted to the trial court on pleadings, various depositions, and the parties' stipulations with exhibits and their respective briefs.
 {¶ 6} On July 3, 2007, the trial court determined that appellants had "failed to meet their burden that the Zoning Resolution is clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare." The court found that the township's classification of appellants' property as residential was "valid and enforceable." The court concluded that the denial of the requested zone change was a "valid legislative function" and "not arbitrary and unreasonable." On July 31, 2007, the trial court filed a nunc pro tunc entry adding the finding that there was "no just reason for delay." This appeal followed.
 {¶ 7} Appellants' sole assignment of error states:
 {¶ 8} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN FINDING THAT: APPELLANTS FAILED TO MEET THEIR BURDEN TO ESTABLISH THE UNCONSTITUTIONALITY OF THE ZONING ORDINANCE AS APPLIED TO APPELLANTS' PROPERTIES; THE COITSVILLE TOWNSHIP ZONING RESOLUTION WAS VALID AND ENFORCEABLE; AND THAT, THE DENIAL OF THE REQUESTED ZONE CHANGE WAS A VALID LEGISLATIVE FUNCTION."
 {¶ 9} "Zoning is a valid legislative function of a municipality's police powers. Euclid v. Ambler Realty Co. (1926), 272 U.S. 365,47 S.Ct. 114, 71 L.Ed. 303; Section 19, Article I, Ohio Constitution (`Private property shall ever be held inviolate, but subservient to the public welfare'). Courts should not interfere with zoning decisions unless the municipality exercised its power in an arbitrary and unreasonable manner and the decision has no substantial relation to the public health, safety, morals, or general welfare. Id. at 394,47 S.Ct. 114, 71 L.Ed. 303; Valley Auto Lease of Chagrin Falls, Inc. v. AuburnTwp. Bd. of Zoning Appeals *Page 3 
(1988), 38 Ohio St.3d 184, 185, 527 N.E.2d 825; Willott v.Beachwood (1964), 175 Ohio St. 557, 560, 26 O.O.2d 249, 197 N.E.2d 201."Jaylin Investments, Inc. v. Moreland Hills, 107 Ohio St.3d 339,2006-Ohio-4, 839 N.E.2d 903, at ¶ 10.
 {¶ 10} "A zoning ordinance may be challenged as unconstitutional on its face or as applied to a particular set of facts." Id. at ¶ 11, citing Belden v. Union Cent. Life Ins. Co. (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraph four of the syllabus. Here, appellants' claim is an "as applied challenge."
 {¶ 11} "A zoning regulation is presumed to be constitutional unless determined by a court to be clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community." (Emphasis added.) Goldberg Cos., Inc.v. Richmond Hts. City Council (1998), 81 Ohio St.3d 207, 690 N.E.2d 510, syllabus. "The burden of proof remains with the party challenging an ordinance's constitutionality, and the standard of proof remains `beyond fair debate.'" Id., 81 Ohio St.3d at 214, 690 N.E.2d 510. The Supreme Court of Ohio has found "that there is little difference between the `beyond fair debate' standard and the `beyond a reasonable doubt' standard [,]" and "[a] court may substitute its judgment for that of the local governing body only when a municipality exercises its zoning power in an arbitrary, confiscatory or unreasonable manner which violates constitutional guaranties." Cent. Motors Corp. v. Pepper Pike (1995),73 Ohio St.3d 581, 584 (internal citations omitted).
 {¶ 12} As below, appellants' main argument is that the area surrounding their lots has no longer maintained its "residential integrity and character." They attempt to paint a picture of an area that has transformed over the years into a commercial district. There are eight homes located on Upland Avenue, including the two owned by the Arendas. Two of those are on the same south-side of the street as the Arendas. Also on that side of the street and to the east are two businesses-Oakview Catering and DeMarco's Restaurant Bar. Although Oakview Catering's property is zoned residential, it is used commercially pursuant to a permissible non-conforming use under the zoning regulations. DeMarco's Restaurant Bar is zoned *Page 4 
business, but according to appellants, is inexplicably used commercially since the operation of a restaurant and bar is not a permitted use under a business classification.
 {¶ 13} Across the street to the north of the appellants' lots is located a Sunoco gas station and a convenience store. Like the Oakview Catering's property, those properties too are zoned residential, but are allowed to operate commercially as an authorized non-conforming use.
 {¶ 14} To the west of appellants' lots lies a small plaza which contains Sunsation tanning salon. To the southwest are Buckeye Auto Mart and Rentals and Storage. Though nearby, these properties are not located within Coitsville Township, but are all zoned commercial. Appellants stress that they are all located on State Route 616. Upland Avenue is a two lane roadway 6/10th of a mile in length and is "part of" State Route 616.
 {¶ 15} At the end of Upland Avenue is Knoll Run Golf Course. Appellants contend that it operates commercially although it is zoned only for business uses. Nearby there is a property which is zoned residential, but which visibly store food vending machines.
 {¶ 16} In addition to the four vacant residential lots owned by Cocca, appellants point out that there has been no new residential construction on Upland Avenue for over forty years.
 {¶ 17} Appellees compare this case to Leslie v. City of Toledo (1981),66 Ohio St.2d 488, 20 O.O.3d 406, 423 N.E.2d 123, and Young Israel ofBeachwood v. S. Euclid, 8th Dist. No. 87336, 2006-Ohio-4379. InLeslie, a real estate developer sought to have residential property rezoned commercial. The property fronted Central Avenue in the city of Toledo. The city twice denied the requested change and the developer then appealed to the common pleas court and then the court of appeals. In a split decision, the court of appeals reversed the lower court determining that denial of the zone change was illegal, arbitrary, confiscatory, and unconstitutional.
 {¶ 18} On further appeal, the Ohio Supreme Court took a different view of the *Page 5 
evidence and disagreed with the appellate court's conclusion. The Court viewed Central Avenue as a dividing line which buffered the developer's property and others to the south of it as an area that had "maintained its residential integrity." Leslie, 66 Ohio St.2d at 490, 20 O.O.3d 406,423 N.E.2d 123. Although there were some lots in the area of that buffer zone classified commercial, the Court noted that the "mere existence of some adjacent property devoted to other uses does not destroy the character of restricted property for residential purposes or render the restrictions arbitrary. * * * Thus, while there are shopping centers, gasoline service stations and other commercial establishments within the general vicinity of the subject property, the residents of those portions of Middlesex, Barrington and Meadowwood Drives and Drummond and Goddard Roads, which intersect Central Avenue and lie to its south, live in an exclusively residential area." (Quotation marks and citations omitted.) Id.
 {¶ 19} Appellants attempt to distinguish Leslie by pointing out that their properties as well as adjacent businesses are all located on State Route 616 and do not lie in an exclusively residential area.
 {¶ 20} In Young Israel of Beachwood v. S. Euclid, 8th Dist. No. 87336,2006-Ohio-4379, Young Israel owned property in the city of South Euclid which was zoned residential. The property sat at the corner of an intersection fronting a road which separates South Euclid from a neighboring city. There was residential housing to the north and east of the property. An apartment complex and medical building were located on other corners of the intersection in the neighboring city. On the last corner sat a fast-food restaurant. Also, one block from there was another intersection characterized as heavily commercial.
 {¶ 21} Young Israel agreed to sell the property to a developer contingent on the developer's ability to successfully obtain a zoning reclassification to commercial. The city denied the request based on its desire to maintain the residential character of the neighborhood. A trial court subsequently denied Young Israel's request seeking to declare the zoning law unconstitutional as applied to it, confirming the *Page 6 
city's legitimate interest in maintaining the residential character of the neighborhood. Young Israel appealed to the Eighth District Court of Appeals.
 {¶ 22} The Eighth District affirmed the trial court finding that the city's desire to maintain the residential character of the subject property was directly related to the safety, health, morals, and welfare of its citizens. The court relied primarily on the comprehensive plan that the city had commissioned to provide it guidance with land use and development issues. While the city's main goal was to be residential in character, it recognized the need for some commercial development as a means to stabilize its tax base for all parts of the community — residential and commercial. The city identified the area surrounding Young Israel's property as mixed use with a focus on higher density residential development. Due to the location of the property, the city feared its commercial development would adversely affect existing, surrounding residential properties.
 {¶ 23} Appellants try to distinguish Young Israel on the basis that appellees did not have a comprehensive plan commissioned as the city had in that case. They allege that appellees' decision was based on the pretext that only US 422, not Upland Avenue, was within the enterprise zone. In fact, appellants argue, all of Coitsville Township, including Upland Avenue, is encompassed within the enterprise zone.
 {¶ 24} In Jaylin Investments, Inc. v. Moreland Hills,107 Ohio St.3d 339, 2006-Ohio-4, 839 N.E.2d 903, the Ohio Supreme Court elaborated on the standard that applies when analyzing an "as applied" challenge to a zoning law:
 {¶ 25} "In a constitutional analysis, the object of scrutiny is the legislative action. The zoning ordinance is the focal point of the analysis, not the property owner's proposed use, and the analysis begins with a presumption that the ordinance is constitutional. The analysis focuses on the legislative judgment underlying the enactment, as it is applied to the particular property, not the municipality's failure to approve what the owner suggests may be a better use of the property. If application of the zoning ordinance prevents an owner from using the property in a particular *Page 7 
way, the proposed use is relevant but only as one factor to be considered in analyzing the zoning ordinance's application to the particular property at issue."
 {¶ 26} In applying this standard, the court in Young Israel relied heavily on the comprehensive plan in evaluating the city's legislative judgment in denying the developer's request. In this case, Coitsville did not implement a comprehensive plan until after appellees denied appellants' request. (Deposition Walter Advey, tr. 58.) However, it is apparent from the record that the legislative judgment underlying the denial of appellants' request was precipitated by the desire of township officials to maintain the residential integrity of the area in which appellants' properties were located. Township trustee Walter Advey's deposition testimony is illustrative of that intent:
 {¶ 27} "A Well, the reason at that time for the denial is that corridor there we would like to keep in a residential environment, because that is our heaviest population with the smallest lots.
 {¶ 28} "And it also the desire of the people that we serve and our constituency who want to keep it, as well as the Township Trustees themselves basically want to keep that area there residential.
 {¶ 29} "Q Okay. And currently how many residential homes, including the two homes owned by the Arendases, are located on that Upland corridor?
 {¶ 30} "A There is quite a bit. Because the homes from Fairlawn actually oversee Upland, too. Fairlawn, Lawnview, Kimmel. Those are all within 50 yards of Upland." (Tr. 41.)
 {¶ 31} Advey also indicated that other requests for zone change in that corridor had been denied because of the desire to keep the area residential. (Tr. 51.) Advey explained that township officials wanted to focus commercial development on 422, a four-lane highway. (Tr. 56.)
 {¶ 32} Trustee Gerald Backo who also voted against the zone change, explained in his deposition:
 {¶ 33} "A After hearing the — there was quite a few people at the, at the *Page 8 
Town Hall meeting. And after observing and hearing what everybody was stating, I felt comfortable at this time that to make that commercial would not be appropriate.
 {¶ 34} "We feel that that area should be residential. We all — we welcome him on 422 as our commercial area. I felt with — that building is so large in that small area, you're going to have major problems with flooding and water detention. I don't recall even seeing that on his map. I looked at it vaguely at that time. I can't recall.
 {¶ 35} "I personally would like to see businesses on the highway because there is more room to turn around.
 {¶ 36} "There is no sidewalks over there in that area, if I recall correctly. It's too congested. The road isn't wide enough. And that particular area, the residents didn't really, they don't want it. And I don't blame them. Keep your business on the business main route." (Tr. 24-25.)
 {¶ 37} In her deposition, Trustee Phyllis Johnson echoed the comments made by Trustees Avdey and Backo. (Tr. 10-11, 13-14.) She reiterated that township officials wanted to keep the area around appellants' properties residential in order to preserve the "close-knit community" that existed in Coitsville. (Tr. 12-13.)
 {¶ 38} As indicated earlier, appellants try to distinguish YoungIsrael on the basis that appellees did not have a comprehensive plan commissioned as the city had in that case. However, Young Israel did not stand for the proposition that the city had to have a comprehensive plan in place in order to justify its zoning decisions. Rather, the comprehensive plan was simply part of the evidence before the court on which it based its decision. From an evidentiary standpoint, each case is different. In this case, the parties submitted an agreed statement of facts along with the deposition testimony of the Arendas and the Coitsville Township Trustees.
 {¶ 39} In this case, the trustees' deposition testimony is evidence enough to establish that their decision making power was not exercised in an arbitrary and unreasonable manner and that the decision bore a substantial relation to the public health, safety, morals, or general welfare of the citizens of Coitsville. In some instances the governmental entity involved is a city and the zoning decision is *Page 9 
ultimately made by councilpersons. In those instances, the Ohio Supreme Court has made the following observations concerning their legislative judgment:
 {¶ 40} "It must be assumed that each councilman considered the matter independently and was aware of public opinion and formulated his own opinion of what the public welfare of his municipality demanded.
 {¶ 41} "The power of the court in such matters as this is extremely limited, and the court can not usurp the legislative function by substituting its judgment for that of the council. Municipal governing bodies are better qualified, because of their knowledge of the situation, to act upon these matters than are the courts." Leslie v.City of Toledo (1981), 66 Ohio St.2d 488, 491, 20 O.O.3d 406,423 N.E.2d 123, quoting Willott v. Beachwood (1964), 175 Ohio St. 557, 559-560,197 N.E.2d 201.
 {¶ 42} Like city councilpersons, the trustees here should be afforded that same presumption. And, indeed, as their aforementioned deposition testimony reveals, they did consider the matter independently and afforded great weight to what the citizens in that area desired. It was apparent that the public welfare demanded that the area maintain its residential classification.
 {¶ 43} In sum, appellants failed in their burden to demonstrate beyond fair debate that the zoning designation was clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community. Accordingly, appellants' sole assignment of error is without merit.
 {¶ 44} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
 DeGenaro, P.J., concurs. *Page 1