OPINION
Defendant-appellant, Jesus C. Ramirez, appeals from the June 26, 2001 judgment entry of the Franklin County Court of Common Pleas, finding him guilty of possession of marijuana, and sentencing him to eight years incarceration. For the reasons that follow, we affirm the judgment of the trial court.
On Friday, February 23, 2001, Joaquin Calvin Kahn Barragan and appellant arrived in Columbus, Ohio, from San Diego, California. Barragan and appellant's sole purpose for coming to Columbus was to rent an apartment in order for marijuana to be shipped to the apartment. Upon their arrival to Columbus, Barragan and appellant went to a Motel 6 to reserve a hotel room. However, there was no availability at the Motel 6 for Friday, February 23. Therefore, Barragan and appellant decided to reserve a hotel room at the Motel 6 for Monday, February 26 and Tuesday, February 27. Since there was no availability at the Motel 6 for Friday, February 23, Barragan and appellant reserved a hotel room at the Baymont Inn, Dublin, Ohio.
On Wednesday, February 28, 2001, Detectives Donovan Maccavee and Thomas Coelho, were assigned to an organized crime commission task force responsible for working package interdiction and drug couriers for United Postal Service ("UPS"). As packages came down the conveyor belt, the detectives reviewed the packaging and label on each individual package. While reviewing the packages, the detectives observed two packages that were suspicious. Detective Maccavee testified that one day prior, a package was "addressed to a Jack K. at an address that I verified some time after its delivery as a motel, but the motel wasn't listed in the address." (Tr. VoI. I, at 32.) The address on the package matched that of the Motel 6, where Barragan and appellant rented a room for Monday, February 26 and Tuesday, February 27.
Detective Maccavee testified that the two suspicious packages "were to a Joaquin K., and the address was verified as a motel, again, but not listing the motel itself." (Id.) Detective Maccavee testified that the box read, "[a]ttention, Joaquin Kahn," and listed as the address "2230 Westbelt Drive, Suite No. 30, Columbus, Ohio." (Tr. Vol. I, at 36.) The address on the package matched that of the Royal Inn Motel. Detective Maccavee observed that the package was taped around the sealed seams, and it was over-taped.
The detectives arranged for a controlled delivery of the two packages to the Royal Inn. Detective Coelho obtained a warrant to open up the boxes, while Detective Maccavee spoke to the property owners of the Royal Inn to obtain permission to conduct the controlled delivery.
The detectives arrived at the Royal Inn and arranged with the manager to leave the boxes at the front desk. Detective Maccavee obtained the name of Joaquin Kahn as the individual who rented room 30. Twenty minutes later, Barragan arrived at the Royal Inn, retrieved the packages, and placed them in the trunk of his car. As Barragan was loading the boxes, Detective Maccavee approached Barragan, identified himself, and arrested Barragan.
While at the Royal Inn, Barragan was read his Miranda rights. After Barragan waived his rights and, in the middle of giving his statement to the detectives, Barragan's cellular phone rang. Barragan answered the phone and spoke in Spanish. Barragan told the detectives that the telephone call was from appellant, who was his contact. Barragan testified, "I'll admit I was trying to hint to him [appellant] to get out of the room in Spanish, like saying `run, uh-huh, yes. Run, get out of there, huh-uh. They're here. Uh-huh.'" (Tr. Vol. I, at 150.) Barragan refused to let the detectives tape record the first cellular phone conversation that he had with appellant.
The detectives, with Barragan's consent, but without appellant's knowledge and consent, tape-recorded two other cellular phone conversations between appellant and Barragan. During the second tape-recorded cellular phone conversation, appellant instructed Barragan to "come now" to the hotel room so that Barragan can deliver the marijuana packages to appellant. (Tr. Vol. I, at 161.)
Barragan also received a cellular phone call from appellant's son, Jesus, Jr., who telephoned Barragan from San Diego, California. With Barragan's consent, but without Jesus, Jr.'s knowledge and consent, the detectives tape-recorded their conversation. This conversation was the third and final phone conversation to be tape-recorded by the detectives.
After speaking with Barragan, the detectives decided to conduct a controlled delivery of the marijuana to the Baymont Inn. Barragan agreed to cooperate with the detectives, and agreed to deliver the two packages to appellant.
The detectives loaded Barragan's car with a duffel bag filled with bricks of marijuana, and Barragan drove to the Baymont Inn. At appellant's direction, Barragan delivered the bag to the Baymont Inn, room 418. As Barragan was entering room 418, the detectives and police entered the room, and arrested appellant.
On March 8, 2001, the Franklin County grand jury indicted appellant on one count of possession of marijuana in an amount exceeding 20,000 grams, a felony of the second degree. On June 20, 2001, a trial commenced, in which appellant did not testify. On June 26, 2001, the trial court found appellant guilty of possession of marijuana, sentenced appellant to eight years incarceration, and ordered appellant to pay a $7,500 fine and court costs. It is from this judgment entry that appellant appeals, assigning the following as error:
"Assignment of Error I
"Appellant was denied due process of law in that there is insufficient evidence to support the judgment of the trial court, and such judgment is against the manifest weight of the evidence.
"Assignment of Error II
"The court erred as a matter of law in restricting the cross-examination of the state's identification witness.
"Assignment of Error III
"The court erred as a matter of law in permitting the use of evidence otherwise not disclosed in discovery and constituting the statements of the appellant."
In his first assignment of error, appellant challenges the sufficiency and weight of the evidence to support his conviction of possession of marijuana. Our review of the record reveals that appellant's conviction is supported by sufficient evidence, and is not against the manifest weight of the evidence.
Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. Thompkins, at 387. In so doing, the court of appeals, sits as a " `thirteenth juror' " and, after " `reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " Id. (quoting State v. Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " `exceptional case in which the evidence weighs heavily against the conviction.' " Thompkins, at 387.
As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236, 2058. It was within the province of the trial court to make the credibility decisions in this case. See State v. Lakes (1964),120 Ohio App. 213, 217 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness.") See State v. Harris (1991), 73 Ohio App.3d 57, 63 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight).
In this case, appellant was convicted of violating R.C. 2925.11, which states, "No person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A). Here, appellant contends that the evidence was insufficient and that his conviction was against the manifest weight of the evidence because: (1) there was a lack of evidence that he possessed the marijuana; (2) Barragan's testimony was not credible; and (3) that there were critical inaccuracies in the translation of the two taped telephone conversations between appellant and Barragan, and the one tape recorded conversation between Barragan and Jesus, Jr. We find none of appellant's contentions persuasive.
As to appellant's first contention that there was a lack of evidence that he possessed the marijuana, appellant argues that Barragan was the key player in making the flight arrangements, reserving the hotel rooms, and handling the marijuana. Appellant contends that although the marijuana was in hotel room number 418, where he was present, his mere presence alone cannot support a finding that he possessed the marijuana. We disagree.
"Possess" or "possession" is defined by R.C. 2925.01(K) as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession does not require actual physical possession; constructive possession will suffice. State v. Wolery (1976), 46 Ohio St.2d 316. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v. Hankerson (1982), 70 Ohio St.2d 87, 91, citing to Wolery, supra. Possession may be individual or joint. Wolery, supra; see State v. Gibson (May 6, 1998), Summit App. No. 18540. "Whether a defendant was aware that he probably possessed a controlled substance is a question of fact to be determined by the trier of fact based on the totality of the circumstances." State v. Jones (Jan. 10, 1990), Hamilton App. No. C-880620.
In this case, when the detectives raided room 418 and arrested appellant, appellant was in possession of a controlled substance. Detective Benjamin Casuccio testified that after the bust was made, he searched room 418, and found appellant's black day planner. Detective Casuccio testified that inside the day planner was a folded piece of paper that had the numbers 2.13, 2.08, 2.08, and 2.09 written on it. Detective Casuccio stated that those numbers corresponded with some of the weights written on the outside of the bundled marijuana packages. Detective Casuccio admitted that he did not know if the folded piece of paper with the numbers was written by appellant. Detective Casuccio also found $5,000 cash in appellant's day planner, and $1,500 cash in appellant's left front pants pocket. More importantly, when appellant instructed Barragan to deliver the packages to room 418, appellant exercised dominion and control over the marijuana. As a result, we find appellant's first contention lacks merit.
As to appellant's second contention that Barragan's testimony was not credible, we again disagree. "The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707,716; DeHass, supra. The trier of fact has the benefit of seeing and hearing the witnesses testify, and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377. An appellate court abuses its discretion by substituting its judgment for that of the trier of fact as to the credibility of witnesses. State v. Walker (1978), 55 Ohio St.2d 208.
Barragan testified that appellant paid cash for the airline tickets from San Diego, California to Columbus, Ohio, provided Barragan with cash to pay for the hotel rooms, and paid cash for Barragan's meals. Barragan testified that on February 27, he retrieved a package that was addressed and delivered to him at Motel 6. Barragan put the package into a duffel bag, and he and appellant took the contents of the duffel bag back to the Baymont Inn, where they "unwrapped block by block, which was kilo blocks." (Tr. Vol. I, at 141.) Barragan further testified that, on February 28, after Barragan received another package at the Royal Inn, appellant phoned Barragan and instructed Barragan to deliver the packages to him at the Baymont Inn. Barragan additionally testified that the piece of paper found in appellant's day planner, that Detective Casuccio testified to, did belong to appellant, and it contained the weights of the marijuana bricks.
Sitting as the "thirteenth juror," and after reviewing the entire record, weighing the evidence, and considering the credibility of Barragan, we determine that Barragan's testimony was not so unbelievable that appellant's conviction must be reversed, and a new trial granted. As such, appellant's second contention also lacks merit.
As to appellant's third contention that the translation of the taped telephone conversation between appellant and Jesus, Jr. contained critical inaccuracies and that therefore there was insufficient evidence to support appellant's conviction of possessing marijuana, we again disagree. Appellant specifically stressed a particular concern with the translation of the Spanish word "jefe." During the tape recorded telephone conversation between Barragan and Jesus, Jr., Barragan used the term "jefe" when referring to appellant. Barragan testified that "jefe," "can mean two meanings, meaning father or boss, and here it says boss, and whoever translated it, which would have been the correct translation, but the way we meant it was dad." (Tr. Vol. I, at 159-160.) Appellant contends that the Spanish word "jefe" refers to "boss" and not "dad," and that the state used the translation of "dad" to identify appellant as the leader of the "marijuana expedition." (Appellant's brief, at 7.)
Hector Rodriguez testified on behalf of appellant. Rodriguez has been a translator for the Franklin County Municipal Court for six years. Rodriguez's first language is Spanish, he was raised in Havana, Cuba, his wife speaks Spanish, and they speak Spanish at home. Rodriguez testified that he had never heard the term "jefe" translated to mean "dad." Upon cross-examination, the prosecutor called Rodriguez's attention to an Oxford Spanish dictionary, and asked Rodriguez if "jefe," "could be a colloquialism or common usage for parents." (Tr. Vol. II, at 323.) Rodriguez agreed. Additionally, the prosecutor also had Rodriguez look at a New Mexico and southern Colorado Spanish dictionary, that defines "jefe," as used in southwest Spanish, to mean "father," "mother," and "the old man." Rodriguez indicated that, according to that dictionary, those meanings are correct.
Detective Kenneth Ramos testified on behalf of the state. Detective Ramos reads, writes, and speaks Spanish fluently. Detective Ramos was certified with the Franklin County Court of Common Pleas to become an interpreter. To qualify as an interpreter, Detective Ramos took a test with a person from the Ohio Hispanic Coalition, and translated Spanish and English verbally and in written form. Detective Ramos testified that he would "try to avoid the [use of] slang, unless I knew more of the case * * * I wasn't involved in the case at all, so I didn't want to make any assumptions on anything." (Tr. Vol. II, at 301-302.) Detective Ramos testified that the literal translation of the word "jefe" is "boss." Detective Ramos testified that using the term "jefe" to refer to "dad" is common, but it is a slang and not common vernacular. While Detective Ramos and appellant both translate "jefe" to mean "boss," this interpretation, even if erroneous, does not override the remaining sufficient evidence to warrant a reversal.
For the foregoing reasons, we find that there was sufficient evidence to support appellant's conviction for possessing marijuana under R.C.2925.11. Moreover, we further find that such a conviction is not against the manifest weight of the evidence. As a result, appellant's first assignment of error is not well-taken and is overruled.
In his second assignment of error, appellant contends that the trial court erred in restricting the cross-examination of Barragan. The admission or exclusion of evidence is a matter resting within the trial court's sound discretion. State v. Combs (1991), 62 Ohio St.3d 278; State v. Lowe (1994), 69 Ohio St.3d 527. Evid.R. 611(B) provides that cross-examination shall be permitted on all relevant matters and matters affecting credibility. "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion." State v. Acre (1983), 6 Ohio St.3d 140, 145. Trial courts may impose reasonable limits on cross-examination based on various concerns, such as harassment, prejudice, confusion of the issues, repetitive testimony, or marginally relevant interrogation. See Delaware v. Van Arsdall (1986),475 U.S. 673, 679, 106 S.Ct. 1431. Furthermore, according to Evid.R. 402, irrelevant evidence is inadmissible. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401; see, also, Brown v. Cleveland (1981), 66 Ohio St.2d 93, 97.
In this case, appellant argued, that if permitted, the cross-examination of Barragan would have allowed the jury to judge Barragan's credibility. Appellant cites three separate instances where he believes that the trial court abused its discretion in limiting cross-examination of Barragan.
In the first instance, appellant contends that the trial court improperly restricted cross-examination into Barragan's background as an actor, and his appearance on "The Jerry Springer Show." Appellant contends that Barragan's appearance on the show, and his relationships with different women, goes to character, not truthfulness and veracity. The trial court stated that it had serious questions about whether Barragan's appearance and statements that he made on "The Jerry Springer Show" were probative of truthfulness or untruthfulness. (June 19, 2001 Tr. at 13.) We cannot say that this specific instance of conduct was clearly probative of Barragan's untruthfulness, as appellant contends. Therefore, we are unable to conclude that the trial court abused its discretion in limiting defense counsel's cross-examination of Barragan's appearance on "The Jerry Springer Show."
In the second instance, appellant contends that the trial court improperly restricted cross-examination into Barragan's alleged hospitalization for mental health treatment. Defense counsel inquired into Barragan's mental health, and asked Barragan if he had been hospitalized as a result of his mental health. Barragan responded, "no." (Tr. Vol. I, at 194.) Appellee objected and inquired into a good-faith basis for the question concerning Barragan's alleged hospitalization. Defense counsel was unable to provide other than double hearsay as a foundation for questions of Barragan's hospitalization. Therefore, we determine that without defense counsel articulating a good-faith basis for questioning Barragan about his mental health, the trial court did not abuse its discretion in limiting defense counsel's cross-examination concerning Barragan's mental health. See State v. Dennis (Nov. 22, 1995), Marion App. No. 9-95-9 (without a good-faith basis, defense counsel's inquiry of the witness' psychiatric condition was irrelevant and, was therefore, properly excluded by the trial court).
In the third and final instance, appellant argues that the trial court restricted appellant's cross-examination of Barragan regarding his discharge from the military service. However, a careful review of the transcripts reveals that the trial court did not restrict defense counsel's cross-examination of Barragan regarding his military experience. Defense counsel asked Barragan why he voluntarily left the United States Army. Barragan provided a response, without objection from appellee, or restriction from the trial court. Therefore, we determine that the trial court did not abuse its discretion in limiting the cross-examination of Barragan, as the trial court allowed defense counsel to ask Barragan why he left the military. As a result, appellant's second assignment of error lacks merit and is not well-taken.
In his third and final assignment of error, appellant argues that, pursuant to Crim.R. 16 and Evid.R. 403(A), the trial court erred in permitting the use of an edited translation of a tape recorded conversation between Barragan and Jesus, Jr., which was not provided to defense counsel prior to trial. Appellant contends that the newly edited transcripts were not identified as accurate representations of the conversation between Barragan and Jesus, Jr. As such, appellant argues that use of the taped recordings were prejudicial to appellant. We disagree.
During trial, the prosecution played two tape recorded conversations that Barragan had with appellant, and one tape recorded conversation that Barragan had with Jesus, Jr. After the prosecution played each taped recording, Barragan translated the Spanish speaking conversations to English. During Barragan's testimony, defense counsel interjected and stated that he had a different version of the translation.[1] Defense counsel indicated that during Barragan's testimony regarding the tape recordings, Barragan interpreted "jefe" to mean "dad," but in the initial translation that defense counsel had, "jefe" was translated to mean "boss." Barragan indicated that he did make corrections to the translation the day prior to his testifying.
At the request of defense counsel to adjourn, the trial court conducted a bench conference. Defense counsel argued that he had an absolute right to the edited information, and since he was denied that right, the tape should be stricken. The trial court reasoned that since the prosecution learned of the edited translation during the middle of the case, there were no discovery violations that would warrant suppression of the evidence. The trial court concluded that it did not find any reason to sustain defense counsel's objection and suppress the corrected translation but would grant a continuance if defense counsel wanted one. Defense counsel responded, "I don't see the value in any more time because there is nothing I can do to change what he's saying." (Tr. Vol. I, at 159.)
Because the evidence against appellant was overwhelming, the outcome of appellant's trial would not have been different if the trial court had stricken the edited translation of the tape recorded conversation between Barragan and Jesus, Jr. First, the alleged interpretation of the word "jefe," in referring to appellant, was not damaging to appellant's case. The term "jefe" can have more than one translation; a translation, which the jury reasonably believed, when used in the context by Barragan, was referencing appellant. Second, as addressed in assignment of error number two, both appellant's and appellee's expert witnesses conceded that the term "jefe" can also be translated to mean "father" as well as "parents," "mother," and "the old man."
Appellant argues that the trial court erred in refusing to limit the use of the transcripts and the tapes. A trial court is, nevertheless, vested with broad discretion when determining whether evidence is relevant pursuant to Evid.R. 401 and 402, and whether the adverse effect of relevant evidence "substantially outweigh[s]" its probative value pursuant to Evid.R. 403. "A trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
The determination of the credibility of witnesses and the weight to be afforded their testimony is for the trier of fact. DeHass, supra. In this case, the jury reasonably believed that the term "jefe" can be used interchangeably between "father" and "boss," and that with either use, Barragan was referring to appellant in his conversation with Jesus, Jr. Likewise, the jury apparently chose to believe the testimony of Barragan, along with Detective Ramos, that the term "jefe," when used in its slang form, can be used to mean "dad." Even more importantly, the jury weighed the credibility of the witnesses, along with the evidence to find appellant guilty beyond a reasonable doubt.
The jury was in a much better position than we, as an appellate court, to view the witnesses and to weigh the credibility of the witnesses' testimony. See, e.g., State v. Dye (1998), 82 Ohio St.3d 323. Even if the testimony had been excluded, the remaining evidence against appellant was sufficient to support his conviction for possessing marijuana. As such, we determine that the trial court's refusals to limit the use of the edited transcripts and the tape recorded conversations was not an abuse of discretion. Appellant's third assignment of error lacks merit and is not well-taken.
For the foregoing reasons, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE and BROWN, JJ., concur.
[1] The translations of the tape recorded phone conversations were identified and admitted into evidence as state's exhibit No. 11.